**NATIONAL CORN GROWERS ASSOCIATION et al.,**
**Plaintiffs,**

v.

**James A. BAKER, III etc. et al., Defendants.**

**No. 85–08–01151.**

United States Court of International Trade.

Nov. 26, 1985.

Williams & Connolly (Aubrey M. Daniel, III, Stephen L. Urbanczyk, Manley W. Roberts, Robert W. Hamilton and William R. Murray, Jr.), Washington, D.C., for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (Kenneth N. Wolf), New York City, for defendants.

McDermott, Will & Emery (R. Sarah Compton, and Kurt J. Olson), Washington, D.C., for intervenor-defendant RAJ Chemicals, Inc.

Rogers & Wells (Robert V. McIntyre and Roger A. Clark), Washington, D.C., for intervenor-defendant Certified Oil Co.

Wilmer, Cutler & Pickering (A. Douglas Melamed, Robert C. Cassidy, Jr. and Deborah M. Levy), Washington, D.C., for proposed intervenor-defendant Citicorp Intern. Trading Co., Inc.

David L. Armstrong, Atty. Gen., Frankfort, Ky. (Frank F. Chuppe, Asst. Deputy Atty. Gen.) Louisville, Ky., for proposed amicus curiae Commonwealth of Kentucky.

*Opinion & Order*

AQUILINO, Judge:

Notwithstanding the court's denial of both plaintiffs' application for a preliminary injunction and defendants' motion to dismiss the complaint in Slip Op. 85-98, as amended, the parties have now returned to this court with renewed requests for the same relief, as well as for other relief.

I

For their part, the defendants (now joined by intervenor-defendant RAJ Chemicals, Inc.) posture that they are immune from this suit, that the court does not have jurisdiction and that the plaintiffs lack standing, to wit:

... Despite the pendency of the Federal defendants' dispositive motion, despite repeated requests by the Federal defendants for this Court to address and determine critical questions such as: 1) standing, 2) sovereign immunity, 3) failure to state a cause of action, 4) lack of jurisdiction and 5) failure to comply with mandatory conditions precedent to this Court's jurisdiction, this Court has not done so. Rather, this Court has ordered discovery to go forward.[1]

In repeating their demand that the court "adjudicate the dispositive issues" raised by the defendants, counsel also request that any adverse decision thereof be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292.[2]

■ Were it not for this new, contingent application, this court would not discuss the issues self-evidently considered by Judge Carman at the time of the motions for immediate equitable relief[3], as well as in his memorandum opinion, and subsequently re-considered by this court in conjunction with the determination to permit the plaintiffs certain discovery, Slip Op. 85-105. Indeed, the memorandum opinion was amended on September 23, 1985 to state unequivocally "defendant's motion to dismiss denied." As to plaintiffs' standing, the opinion reads:

... Plaintiffs here are connected with the domestic production of ethanol. They are threatened with economic injury if ethanol is imported at a rate of duty approximately 58 cents per gallon below the rate set by Congress. Because Congress established the tariff under item 901.50, TSUS, to offset tax exemptions available to imported ethanol, thus protecting domestic producers, plaintiffs' threatened injury is arguably within the zone of interest Congress sought to protect by the tariff. *See* 126 Cong.Rec. 31,709.[4]

Taking the allegations of plaintiffs' complaint as true, as the court must for purposes of determination of defendants' motion to dismiss[5], paragraph 2 thereof shows that the National Corn Growers As-

---

1. Federal Defendants' Opposition to Plaintiffs' Motion for Rehearing of Denial of Preliminary Injunction and Renewed Motion for Preliminary Injunction and Federal Defendants' Request for Certification for Interlocutory Review [hereinafter referred to as "Certification Motion"], p. 6.

2. *Id.* at 7. This request, which is discussed hereinafter in Part II of this opinion, is accompanied by an apparent threat to seek a writ of prohibition and mandamus in the event of denial of certification. *See id.,* n. 3. The threat is repeated at pages 16–17 of Federal Defendants'

Memorandum in Opposition to Plaintiffs' Motion to Compel and Request in the Alternative for Permission to Proceed By Way of Immediate Appeal and Stay [hereinafter referred to as "Defendants' Documents Memorandum"].

3. *See, e.g.,* minutes of hearing on Sept. 11, 1985, p. 6.

4. Slip Op. 85–98, p. 4.

5. *See, e.g., Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969).

sociation has as its purpose the promotion of American corn, which is a principal source of ethanol. Its membership includes 19 supporting members from related sectors of the corn industry, including fuel ethanol producers.

Plaintiff New Energy Company of Indiana allegedly operates a fuel ethanol facility in South Bend.[6] It is averred that plaintiff Archer Daniels Midland Company operates three ethyl alcohol plants and is the largest producer of fuel ethanol in the United States.[7] According to paragraph 5 of the complaint, plaintiff Ohio Farm Bureau Federation, Inc. has two wholly-owned subsidiary corporations with interests in ethanol-producing facilities, and paragraph 6 claims that plaintiff A.E. Staley Manufacturing Company operates a fuel ethanol plant in Tennessee.

As a group, these named plaintiffs are characterized as "domestic interested parties who have been adversely effected [*sic*] and aggrieved by the entries and the defendants' rulings at issue in this case."[8] Accepting this contention as true for the purpose of determination of defendants' motion, the Administrative Procedure Act, 5 U.S.C. § 702, provides, in part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. . . .

The Supreme Court has characterized actions brought pursuant to this statute as follows:

> The trend of cases arising under the APA and other statutes authorizing judicial review of federal agency action has been toward recognizing that injuries other than economic harm are sufficient to bring a person within the meaning of the statutory language, and toward dis-

carding the notion that an injury that is widely shared is *ipso facto* not an injury sufficient to provide the basis for judicial review.[9]

Here, of course, the plaintiffs are claiming economic harm, and the Supreme Court has stated that

> palpable economic injuries have long been recognized as sufficient to lay the basis for standing, with or without a specific statutory provision for judicial review.[10]

*Cf. Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). In *Camp*, the Court held that the plaintiffs had standing to obtain judicial review of a ruling by the Comptroller of the Currency. In *Barlow*, the Court held that tenant farmers eligible for payments under the upland cotton program had standing to challenge an amended regulation of the Secretary of Agriculture. In neither case was the defendant federal official able to show that Congress sought to preclude judicial review of the administrative rulings. *See* 397 U.S. at 157 and 165, 90 S.Ct. at 831 and 837.

Defendants' memorandum of law refers to a number of recent Supreme Court decisions on the issue of standing, most notably, *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979), and *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). These decisions, however, do not support the claim of lack of standing herein.

---

**6.** *See* complaint, para. 3.

**7.** *See id.,* para. 4.

**8.** *Id.,* para. 7.

**9.** *Sierra Club v. Morton,* 405 U.S. 727, 738, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972).

**10.** *Id.,* 405 U.S. at 733–34, 92 S.Ct. at 1365, citing *Hardin v. Kentucky Utilities Co.,* 390 U.S. 1, 7, 88 S.Ct. 651, 655, 19 L.Ed.2d 787 (1968); *Chicago v. Atchinson, Topeka & Santa Fe Railway Co.,* 357 U.S. 77, 83, 78 S.Ct. 1063, 1067, 2 L.Ed.2d 1174 (1958); *FCC v. Sanders Bros. Radio Station,* 309 U.S. 470, 477, 60 S.Ct. 693, 698, 84 L.Ed.2d 869 (1940).

In *Warth*, standing was denied due to the failure of the complaint "clearly to allege facts" demonstrating that the named plaintiffs were the proper persons to invoke judicial resolution of the dispute. 422 U.S. at 518, 95 S.Ct. at 2215. This is hardly the case here, where the complaint more than adequately meets the Article III requirements of alleging injury. As for the "prudential limitations" [11] on the exercise of federal-court jurisdiction in an action such as this, the Court in *Warth* stated:

> ... Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules. Of course, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants. *E.g., United States v. SCRAP*, 412 U.S. 669 [93 S.Ct. 2405, 37 L.Ed.2d 254] (1973). But so long as this requirement is satisfied, persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others, and, indeed, may invoke the general public interest in support of their claim. 422 U.S. at 501, 95 S.Ct. at 2206 (citations omitted).

This is precisely the analysis the Court followed in *Gladstone* in concluding that "the facts alleged in the complaints and revealed by initial discovery [we]re sufficient to provide standing under Art. III" [12], as well as under Title VIII of the Civil Rights Act enacted by Congress in 1968. *See* 441 U.S. at 100–09, 99 S.Ct. at 1608–12.

The *Valley Forge* opinion recites the standing requirement that a "complaint fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question' " [13], quoting from *Camp, supra*, 397 U.S. at 153, 90 S.Ct. at 829. In concluding that the plaintiffs in *Valley Forge* lacked standing to pursue their esoteric claim of violation of the Establishment Clause of the First Amendment as a result of transfer of title to some federal land, the Supreme Court stated:

> ... We simply cannot see that [plaintiffs] have alleged an *injury* of *any* kind, economic or otherwise, sufficient to confer standing. 454 U.S. at 486, 102 S.Ct. at 766 (emphasis in original; footnote omitted).

This court cannot, and therefore does not, reach the same conclusion as to plaintiffs' complaint herein.

The memorandum opinion of September 20, 1985 states that "it is clear that this Court should exercise jurisdiction under section 1581(i) when the usual route through administrative action would result in a 'manifestly inadequate' remedy" [14], citing for support *Luggage and Leather Goods Manufactures of America, Inc. v. United States*, 7 C.I.T. —, 588 F.Supp. 1413, 1420 (1984), and *United States Cane Sugar Refiners' Association v. Block*, 3 C.I.T. 196, 544 F.Supp. 883, *aff'd*, 69 CCPA 172, 683 F.2d 399 (1982). The opinion states further:

> ... Under the circumstances and the facts of this case, the Court holds it is appropriate to exercise jurisdiction under § 1581(i) for the limited purpose of hearing plaintiffs application for the extraordinary relief of a preliminary injunction. [15]

That application for a preliminary injunction having been denied, the defendants

---

**11.** 422 U.S. at 498, 95 S.Ct. at 2205.

**12.** 441 U.S. at 115, 99 S.Ct. at 1615.

**13.** 454 U.S. at 475, 102 S.Ct. at 760. In their present request for certification, the defendants emphasize the use of the word "arguably" in the memorandum opinion's reference [quoted above, p. 1264] to plaintiffs' threatened injury "within the zone of interest Congress sought to protect by the tariff." To the extent that word implied uncertainty in the context of the application for extraordinary equitable relief, no such uncertainty exists now with regard to liberal construction of the complaint. *See, e.g. Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

**14.** Slip Op. 85–98, p. 5.

**15.** *Id.,* p. 6.

contend in their present papers that the court's jurisdiction, as referred to in the foregoing excerpt, thereby expired.[16] Moreover, they argue that plaintiffs' action is "rendered nugatory after 5:00 p.m., November 1, 1985"[17] as a result of defendants' "declared intention"[18] to comply fully with the law, namely, item 901.50, TSUS[19], after that date.

Of course, the defendants have contended from the commencement of this action that the court is without jurisdiction under 28 U.S.C. § 1581(i), which provides:

> In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
> (1) revenue from imports or tonnage;
> (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
> (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than protection of the public health or safety; or
> (4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

Defendants' argument is that the filing of a petition pursuant to 19 U.S.C. § 1516

is a mandatory condition precedent to obtaining judicial review ... [P]etitions pursuant to 19 U.S.C. § 1516 are the only reviewable actions, constituting the *only* cause of action under which Congress enabled the domestic industry to seek judicial review of the Secretary's decision concerning the classification of imported merchandise.[20]

In other words, jurisdiction of the Court of International Trade is based only on 28 U.S.C. § 1581(b):

> The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516 of the Tariff Act of 1930.

This position is not well-taken, however. The complaint shows that in 1984 the United States Ambassador to Brazil wrote the defendant Commissioner of Customs, requesting a ruling to circumvent "the very high U.S. tariffs on ... exports of Brazilian alcohol to the U.S."[21] Customs thereafter issued a letter to the ambassador ruling that various ethanol

> mixtures ... would not be subject to the added duties for ethyl alcohol used as a fuel or imported for fuel purposes in item 901.50, TSUS.[22]

The complaint shows that letter rulings to this effect issued to importers.[23]

On July 3 and 19, 1985, the plaintiffs herein petitioned the defendants to revoke those rulings[24], and on or about August 2, 1985 the Customs Service sent letters to the importers, stating, in part:

---

**16.** *See* Certification Motion, p. 2.

**17.** *Id.*

**18.** *Id.*

**19.** This item, enacted in 1980 [*see* 94 Stat. 2694], presently provides for an increase until 1993 in the duties on ethyl alcohol imported for fuel use as follows:

> Ethyl alcohol (provided for in item 427.88, part 2D, schedule 4) when imported to be used in producing a mixture of gasoline and alcohol or a mixture of a special fuel and alcohol for use as a fuel, or when imported to be used otherwise as fuel ...... 60¢ per gal.

**20.** Memorandum in Support of Defendants' Motion to Dismiss [hereinafter referred to as "Defendants' Memorandum"], p. 11 (emphasis added).

**21.** Exhibit B to complaint.

**22.** Exhibit C to complaint.

**23.** *See* complaint, para. 23 and Exhibit D thereto.

**24.** *See* complaint, paras. 26 and 27 and Exhibits E and F thereto.

Upon review of this matter we conclude that the 60 cents per gallon duty should be applied to the ethyl alcohol component of this mixture when the mixture is imported for fuel use, inasmuch as the language of item 901.50 encompasses all ethyl alcohol, provided for in item 427.88, which is imported for fuel use, whether it is imported by itself or in a mixture.

 \* \* \* \* \* \*

This revocation is made pursuant to section 177.9(d)(1), Customs Regulations, and is effective with respect to all entries made after 5:00 p.m. local time, August 2, 1985. Entries made prior to that time will be governed by the ruling previously issued to you. With respect to any entries made after the effective date of the instant ruling, Customs will consider all facts and evidence submitted by you in connection with claims of reliance on the ruling previously issued you.[25]

However, despite this revocation, Customs thereafter issued letters acquiescing in entries of ethanol mixtures under its prior rulings until 5:00 p.m. on November 1, 1985.[26] This "grandfathering"[27] was apparently based on claims on reliance.[28]

The complaint shows that the plaintiffs objected to these new rulings in August 1985.[29] They then commenced this action, alleging that the Customs Service rulings both before and after the August 2, 1985 revocation were unlawful and praying for a declaratory judgment to this effect and injunctive relief against entry of fuel ethanol after August 2, 1985 without collection of duties prescribed by item 901.50, TSUS.

The defendants admit, as they must, that domestic interested parties such as the plaintiffs may petition the Secretary of the Treasury *"informally . . . to bring about a change in import classification by proce-*

dures other than resort to proceedings under 19 U.S.C. § 1516"[30], citing *Way Distributors, Inc. v. United States*, 85 Cust.Ct. 54, C.D. 4870, *aff'd*, 68 CCPA 57, C.A.D. 1265, 653 F.2d 467 (1981). Nevertheless, they argue that that section—1516 —provides the sole "legal right" to challenge an unsatisfactory outcome of such informal procedures.

There is no doubt that a petition pursuant to Section 1516 is the primary and traditional means of challenging the classification or rate of duty upon designated imported merchandise, but the foregoing absolutist argument seemingly disregards the precise nature of this action. Here, the defendants have accepted plaintiffs' position that item 901.50, TSUS applies, *i.e.,* there is no dispute as to classification or rate of duty within the meaning of Section 1516. Rather, the controversy stems from defendants' determination to deviate from the duty. The plaintiffs seek to counteract this transitory digression, in part through declaratory judgment and mandamus, both federal-court remedies of long standing and independent of remedies prescribed by the Tariff Act of 1930. For example, in *National Milk Producers Federation v. Shultz*, 372 F.Supp. 745 (D.D.C.1974), the district court determined that it had jurisdiction under 28 U.S.C. § 1361 to force the Secretary of the Treasury to comply with the requirements of 19 U.S.C. § 1303. Of course, this grant of mandamus jurisdiction, as well as that of declaratory-judgment jurisdiction, are now vested in this Court of International Trade as a result of enactment of the Customs Courts Act of 1980. In its report on this statute, the Committee on the Judiciary of the House of Representatives stated:

Subsection (c)(1) [of 28 U.S.C. § 2643] is a general grant of authority for the Court of International Trade to order any

---

**25.** Exhibit H to complaint.

**26.** *See* complaint, paras. 31 and 32 and Exhibits J and K thereto.

**27.** Complaint, para. 33.

**28.** *See* Exhibit K to complaint.

**29.** *See* complaint, paras. 34 and 35 and Exhibits L and M thereto.

**30.** Defendants' Memorandum, p. 11 (emphasis in original).

form of relief that it deems appropriate under the circumstances. It is the Committee's intent that this authorization be deemed to grant the Court of International Trade remedial powers co-extensive with those of a federal district court. This provision makes it clear that the court may issue declaratory judgments, writs of prohibition and mandamus, orders of remand, and preliminary or permanent injunctive relief. . . .[31]

■ A review of subsections (a) through (h) of 28 U.S.C. § 1581 leads to the conclusion that jurisdiction for this court's power to grant declaratory or mandamus relief in a manner co-extensive with that of a district court in an action such as this must be based on subsection (i).[32] The defendants admit that this subsection is a "residual jurisdictional grant, in addition to the jurisdiction provided in 28 U.S.C. § 1581(a)–(h)"[33], citing *United States v. Uniroyal, Inc.*, 69 CCPA 179, 687 F.2d 467 (1982).

In that case, the government apparently raised the same jurisdictional argument raised herein, albeit necessarily based on subsection (a), as opposed to (b), of Section 1581. The CCPA agreed with the argument that subsection (i) was not the appropriate jurisdictional predicate for the plaintiff importer's concern over the impact of a ruling as to both past and future marking of footwear. Judge Baldwin's opinion for the majority states that Congress did not intend that subsection (i) be "used *generally* to bypass administrative review by *meaningful protest*"[34]. In her concurring opinion, Judge Nies stated:

. . . Section 1581(i) provides jurisdiction *"in addition to* the jurisdiction conferred . . . by § 1581(a)–(h)"* (emphasis added) and may not be construed as an all embracing alternative remedy to those sections. In my view the broad subject matter jurisdiction of the court under § 1581(i) may be invoked only when no other remedy is available or the remedies provided under other provisions of [28] USC 1581 are manifestly inadequate. 69 CCPA at 187, 687 F.2d at 475 (footnote omitted).

When pursuit of a protest under 19 U.S.C. § 1516 is manifestly inadequate, which was the court's conclusion herein on September 20, 1985 [35], subject matter jurisdiction of this Court of International Trade is properly predicated on 28 U.S.C. § 1581(i). *E.g., Luggage and Leather Goods Manufacturers of America, Inc. v. United States, supra. See also Cane Sugar Refiners Association v. Block, supra; Vivitar Corp. v. United States,* 7 C.I.T. ——, 585 F.Supp. 1419 (1984), *aff'd,* 761 F.2d 1552 (Fed.Cir.1985).

Indeed, pursuit of a protest would appear no more meaningful now than it did in September, notwithstanding the fact that defendants' self-imposed grace period has expired and also that on September 18, 1985 the International Trade Administration ("ITA") reached a preliminary determination that "fuel ethanol from Brazil is being, or is likely to be, sold in the United States at less than fair value, as provided in section 733 of the Tariff Act of 1930" [36], thereby causing suspension of liquidation of all entries of fuel ethanol from Brazil on or after September 25th.[37] This determina-

---

**31.** H.R.Rep. No. 1235, 96th Cong., 2d Sess. 61 (1980), U.S.Code Cong. & Admin.News 1980, pp. 3729, 3772–3773.

**32.** Pursuant to 28 U.S.C. § 2643(c)(4), the court may order appropriate declaratory relief in an action invoking jurisdiction under subsection (h), but 28 U.S.C. § 2631(h) provides that such an action may be commenced by a person with standing to bring suit under subsection (a), as opposed to (b), of Section 1581.

**33.** Defendants' Memorandum, p. 9.

**34.** 69 CCPA at 184, 687 F.2d at 472 (emphasis added, footnote omitted).

**35.** *See supra,* p. 1266.

**36.** 50 Fed.Reg. 38,872 (1985). Final determination is predicted by December 2, 1985. *See id.*

**37.** *See* 50 Fed.Reg. 38,874 (1985). On April 11, 1985, the International Trade Commission had found that there is a reasonable indication that imports of fuel ethanol from Brazil are threatening material injury to a United States industry. *See* USITC Pub. No. 1678 (April 1985).

tion, of course, does not suspend liquidation of entries for the period August 2 to September 25th.[38]

Intervenor-defendant RAJ Chemicals admits that this is a "highly unusual action"[39], but, with the passing of the November 1, 1985 deadline, it now argues in a supplemental motion to dismiss that the action is moot. The motion states that five shipments of fuel ethanol totalling 44 million gallons were landed in the United States before November 1st.[40]

Apparently as a result of discovery, the plaintiffs depict the shipments as follows:

| Importer | Quantity of Ethanol Blend | Approximate Date of Entry | Port of Entry | Vessel |
| --- | --- | --- | --- | --- |
| Citicorp | 8 million gallons | 9/5/85 and 9/6/85 | Wilmington, N.C. and Savannah, Ga. | Stolt Luisa Pando |
| Citicorp | 10 million gallons | late Oct., 1985 | Savannah, Ga. and/or Wilmington, N.C. | Avanti |
| RAJ | 6.03 million gallons | 9/4/85 | Redwood City, Cal. | Stolt Venture |
| Southern Missouri | 8.82 million gallons | 10/29/85– 10/30/85 | Baton Rouge, La. | Product Splendor |
| Southern Missouri | 10.08 million gallons | 10/29/85– 10/30/85 | West Wego, La. | Chios [41] |

They deny that their action is moot, arguing that past entries pose a

continuing threat of future injury, because those entries are being and will be marketed after November 1. Such marketing will compete with domestic ethanol, driving down prices, displacing domestic product, and consequently reducing demand for American corn.[42]

Moreover:

... [G]iven the Service's position, there is a reasonable possibility that defendants will issue similar rulings in the future and again assert the authority to grant importers a duty-free grandfather period.... If the grandfathering period is sufficiently short, as it is here, others (including plaintiffs) may again suffer

**38.** The inadequacy of the protest procedure under 19 U.S.C. § 1516 to address this unique problem, allegedly the result of an unlawful act, is further manifested by subsection (d) thereof, which makes relief thereunder prospective only. Cf. *Flintkote Co., Glens Falls Division v. Blumenthal,* 596 F.2d 51, 55 (2d Cir.1979).

**39.** Intervenor-Defendant RAJ Chemicals Inc.'s Supplemental Motion to Dismiss, p. 16, n. 6 (Nov. 7, 1985).

**40.** *See id.,* p. 3. Exhibits A and B to the supplemental motion account for two shipments aggregating 18.90 million gallons having been imported from Brazil during the weekend of October 26–27, 1985 by Southern Missouri Oil Company and having been "immediately sold and transferred to CITGO Petroleum Corporation." Exhibit B, p. 4, para. 13. Southern Missouri apparently received "authorization letters" from the Customs Service on or about October 11, 1985 to land both shipments at a rate of duty of 5% *ad valorem. See id.,* paras. 10–12.

CITGO apparently redistributed 29,000 barrels and 10,000 barrels from these shipments to RAJ Chemicals. *See* Exhibit A, pp. 3–4, para. 9.

**41.** Supplemental Memorandum in Support of Plaintiffs' Motion for Rehearing of Denial of Preliminary injunction and Renewed Motion for Preliminary Injunction, and Reply to Federal Defendants' and RAJ Chemical Inc.'s Oppositions [hereinafter referred to as "Plaintiffs' Supplemental Memorandum"], Exhibit 1 (Nov. 8, 1985).

**42.** *Id.,* p. 48 (footnote omitted).

injury from duty-free imports without having sufficient time to obtain a judgment before the period ends.[43]

The plaintiffs contend that the rulings complained of are capable of repetition, yet evading review and therefore this action is not moot, citing *Southern Pacific Terminal Company v. ICC*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), and *Gallagher & Ascher Co. v. Simon*, 687 F.2d 1067 (7th Cir.1982).

■ This court agrees that this action is not moot. In *Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975), the Supreme Court recognized the continuing vitality of the "capable of repetition, yet evading review" doctrine, albeit

> limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.[44]

The first element has already proven true, and the court is unable to conclude that the complaining parties will not be subjected to the same action again. *Cf. County of Los Angeles v. Davis*, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). In fact, when this court suggested during a conference with counsel that liquidation be suspended pending expedited discovery and trial of the issues raised herein, the defendants rejected the suggestion, renewing their demand for reconsideration of their threshold legal arguments. That is, the defendants consider themselves free to liquidate the above entries on their own terms—terms which the complaint has alleged from the beginning will cause the plaintiffs irreparable harm.[45]

The court cannot decide the merits of these conflicting positions without a trial, which it has jurisdiction to conduct pursuant to 28 U.S.C. § 1581(i)(4). The defendants contend, however, that they are immune from this suit, relying on *Louisiana v. McAdoo*, 234 U.S. 627, 34 S.Ct. 938, 58 L.Ed. 1506 (1914). In that case, the Supreme Court held that the defense of sovereign immunity barred the State of Louisiana, as a producer and seller of sugar, from challenging the Secretary of the Treasury's determination of the appropriate tariff rate for Cuban sugar.

*McAdoo*, however, is substantially different from this action. There, the Secretary of the Treasury had to determine whether the provisions of the Tariff Act of 1913 had superseded the tariff provisions contained in a 1902 commercial treaty between the United States and Cuba that was enacted into law by Congress in 1903. The Court held that the process of deciding the applicable duty involved the exercise of discretion by the Secretary in determining the applicable duty. Here, the Secretary does not dispute the duty for imported fuel ethanol, which is clearly stated in the Tariff Schedules of the United States and which Congress clearly intends be imposed. Since there is no question as to the applicable duty, its imposition appears to be a ministerial, rather than a discretionary, matter.

■ In *Eastern Kentucky Welfare Rights Organization v. Simon*, 506 F.2d 1278 (D.C.Cir.1974), *vacated and remanded on other grounds*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1975), the Court of Appeals commented:

> *McAdoo*, however, must be viewed in its proper perspective. The Court decided that case in 1914. Since then, significant changes have occurred in the area of standing, and exceptions to the doctrine of sovereign immunity have been

---

**43.** *Id.*, p. 49, n. 33.

**44.** 423 U.S. at 149, 96 S.Ct. at 348; *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982).

**45.** *See generally* complaint, paras. 37–45.

judicially recognized.... Moreover, with the advent of the Administrative Procedure Act in 1946, the continued viability of sovereign immunity with respect to administrative actions has been seriously questioned.[46]

The Administrative Procedure Act, 5 U.S.C. § 702, provides, in pertinent part:

... An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided,* That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance....

The standard for application of this statute, as enunciated by the Supreme Court in decisions such as *Association of Data Processing Service Organizations, Inc. v. Camp* and *Barlow v. Collins, supra,* is whether it is clear that Congress sought to preclude judicial review of the government action in question. Applying this standard, it is anything but clear from a reading of the Customs Courts Act of 1980 and its legislative history that Congress intended to shield official acts of the kind under challenge herein from review by this court.

Since, as this court has concluded, that legislation has provided subject-matter jurisdiction for aggrieved domestic interested parties to obtain judicial review and those parties have standing to proceed, defend-

ants' motion to dismiss the complaint must be denied[47], since they are not immune from the suit. *Compare* 5 U.S.C. § 702, *supra, with California v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977), *and Alberta Gas Chemicals, Inc. v. Blumenthal,* 82 Cust.Ct. 77, 88, C.D. 4792, 467 F.Supp. 1245, 1253 (1979).

## II

The court's foregoing reconsideration and necessary denial of defendant's motion to dismiss the complaint calls into account defendants' contingent request for inclusion in the order of denial of a statement pursuant to 28 U.S.C. § 1292(d)(1), which provides:

... [W]hen any judge of the Court of International Trade, in issuing any ... interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

This is an extraordinary form of relief, which is usually granted only in complex cases. *See, e.g., Baxter Travenol Laboratories v. LeMay,* 514 F.Supp. 1156, 1159 (S.D.Ohio 1981), *appeal dismissed,* 708 F.2d 721 (6th Cir.1982). The defendants seemingly misunderstand its purpose. As the Third Circuit has pointed out with regard to the companion provision for appeals from interlocutory district-court orders:

It is quite apparent from the legislative history ... that Congress intended

---

**46.** 506 F.2d at 1282–83 (citations omitted). The Supreme Court expressed no opinion as to the continued vitality of *McAdoo. See* 426 U.S. at 36, n. 14, 96 S.Ct. at 1923 n. 14.

**47.** The defendants pay nothing more than the lip service quoted above, page 1264, to the point

that plaintiffs' carefully-crafted complaint fails on its face to state a claim upon which relief could be granted. The motion to dismiss of intervenor-defendant RAJ Chemicals does not add to the discussion on this point.

that § 1292(b) should be sparingly applied. It is to be used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation.[48]

■ Denial of a motion to dismiss a complaint is not sufficient, in itself, to warrant certification of an interlocutory appeal. *See, e.g., C.L. Hutchins & Company v. United States,* 67 Cust.Ct. 354, C.D. 4297, 334 F.Supp. 188 (1971); *A.N. Deringer, Inc. v. United States,* 70 Cust.Ct. 337, C.R.D. 73–4 (1973). *See also Kurt S. Adler, Inc. v. United States,* 71 Cust.Ct. 284, C.R.D. 73–31 (1973) (grant of motion for more definite statement not sufficient ground for interlocutory appeal). Here, defendants' papers do not convince this court that the motion to dismiss raises issues of such potential for disagreement that an immediate appeal is warranted.

■ But even if they did make such a showing, the defendants fail to show how such an appeal would materially advance termination of the litigation in view of the discovery already conducted, combined with a request for trial in early December

1985[49] and the transitory nature of the Customs rulings complained of. Furthermore, the issues raised do not portend a protracted trial.

In short, the court is not persuaded that the interests of orderly procedure would best be served by certifying for appellate review the points made by the motions to dismiss the complaint, and defendants' motion pursuant to 28 U.S.C. § 1292(d)(1) for certification of such an appeal therefore must be denied.

### III

As indicated above, the plaintiffs have served and filed a Motion for Rehearing of Denial of Preliminary Injunction and Renewed Motion for Preliminary Injunction purportedly pursuant to Rules 59 and 65 of the Rules of the Court of International Trade. Having made this motion within 30 days of the court's denial on September 16, 1985 of plaintiffs' original application and issuance of the memorandum opinion on September 20th[50], the plaintiffs served and filed on November 8th their Supplemental Memorandum[51] and also delivered to the court three bulky bound volumes of appendices thereto.[52]

---

**48.** *Milbert v. Bison Laboratories,* 260 F.2d 431, 433 (3d Cir.1958). *See also Kraus v. Board of County Road Commissioners,* 364 F.2d 919, 922 (6th Cir.1966); *Cardwell v. Chesapeake & Ohio Railway Co.,* 504 F.2d 444, 446 (6th Cir.1974).

**49.** *See* Plaintiffs' Supplemental Memorandum, p. 51.

**50.** Rule 59(b) requires that motions for rehearing be served and filed within 30 days.

**51.** The defendants object to the court's consideration of this memorandum on the ground of Rule 7(d), which has been interpreted as follows:
> Rule 7(d) of the Rules of this Court does not allow the moving party to file a reply brief if its motion was non-dispositive.... The filing of such a reply must be approved by the Court, which approval must be obtained even if the opposing parties have no objection.

*United States Steel Corp. v. United States,* 3 CIT 170 (1982). The court would sustain the objection were it not for the fact that the memorandum essentially presents and discusses the fruits of plaintiffs' discovery (bound in the three vol-

umes), thereby making it germane to their motion to compel additional answers on deposition served and filed on October 28, 1985 and responded to by the defendants on November 12, 1985. *See* Part V, *infra.*

The court also notes in passing the filing on November 7th of a "Supplemental Motion to Dismiss" on behalf of intervenor-defendant RAJ Chemicals, the acceptance of which is urged by the defendants despite the skirting of proper practice.

**52.** For reasons best known to plaintiffs' counsel, copies of these volumes were not timely served on the opposing attorneys. The fact that those attorneys may now possess either the volumes or their contents [*see, e.g.,* Federal Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel Answers to Certain Questions Posed of Mr. Roth and Mr. Fox at Depositions and Request in the Alternative for Permission to Proceed By Way of Immediate Appeal and Stay (hereinafter referred to as "Defendants' Depositions Memorandum"), p. 2 (Nov. 12, 1985)] is no excuse for not providing opponents simultaneously with papers in the format presented to a court.

The defendants and intervenor-defendant RAJ Chemicals vigorously oppose plaintiffs' motion(s) on both procedural and substantive grounds. Their opposition is well-founded.

On its face, Rule 59 provides for rehearings in actions which have been tried and gone to judgment, which is not the case here. Nevertheless, it has been held that the "concept of a new trial under Rule 59 is broad enough to include a rehearing of any matter decided by the court without a jury". *Timken Company v. United States*, 6 C.I.T. ——, 569 F.Supp. 65, 67 (1983), quoting 11 C. Wright & A. Miller, Federal Practice & Procedure § 2804 at 35 (1973). It is claimed in *Gainey v. Brotherhood of Railway & Steamship Clerks*, 303 F.2d 716, 718 (3d Cir.1962), that courts "have experienced no difficulty in concluding that a motion for rehearing or reconsideration made ... after the entry of an appealable order is within the coverage of Rule 59".[53] And the court in *Ionian Shipping Company v. Tyson Shipping Co.*, 49 F.R.D. 334, 336 (S.D.N.Y.1969), found it "clear that the concept of a 'new trial' used in Rule 59 has been interpreted to encompass the rehearing of a motion."

 Be those opinions as they may, determination of a motion for rehearing lies within the sound discretion of the court. *E.g., Commonwealth Oil Refining Company v. United States*, 60 CCPA 162, 166, C.A.D. 1105, 480 F.2d 1352, 1355 (1973). Of course, rehearing can rectify "a significant flaw in the conduct of the original proceeding". *E.g., North American Foreign Trading Corp. v. United States*, 9 C.I.T. ——, 607 F.Supp. 1471 (1985). That is:

A rehearing may be proper when there has been some error or irregularity in the trial, a serious evidentiary flaw, a discovery of important new evidence which was not available, even to the diligent party, at the time of trial, or an occurrence at trial in the nature of an accident or unpredictable surprise or unavoidable mistake which severely impaired a party's ability to adequately present its case.[54]

In other words, rehearing is a means to correct a miscarriage of justice.

However, careful review and consideration of plaintiffs' motion papers do not convince this court of the existence either of a significant flaw in the conduct of the original proceeding in September or of compelling new evidence or of a miscarriage of justice, nor is this court persuaded that plaintiffs' new application entitles them now to a preliminary injunction.

Plaintiffs' argument is essentially three-fold, to wit, (1) the court failed to give adequate weight to factors other than the weight of irreparable harm, (2) the court failed to apply the correct legal standard of threat of irreparable harm and (3) newly-discovered evidence further supports plaintiffs' claims of irreparable harm and probability of success on the merits.

The argument seems oblivious, however, to the rule that "injunctive relief is to be granted only in extraordinary circumstances"[55]. No amount of words, however well-chosen, can create such circumstances. Furthermore, while the court in September considered and weighed each of the four factors to be evaluated in determining an

---

Defendants' counsel also complain of the failure to file the appendices with the Clerk. However, in view of the nature of their contents, filing must abide an order of the court pursuant to Rule 5(d).

**53.** The court's order denying plaintiffs' application for a preliminary injunction was, of course, appealable pursuant to 28 U.S.C. § 1292(c)(1).

**54.** *W.J. Byrnes & Co., Inc. v. United States*, 68 Cust.Ct. 358, C.R.D. 72–5 (1972); *Oak Laminates*

*v. United States*, 8 C.I.T. ——, 601 F.Supp. 1031, 1033 (1984).

**55.** *Zenith Radio Corporation v. United States*, 710 F.2d 806, 809 (Fed.Cir.1983). The plaintiffs do not rely on the holding of this case that the "consequences of liquidation ... constitute irreparable injury" [710 F.2d at 810], presumably because the case involved immediate liquidation during the period of an annual review of an antidumping order pursuant to 19 U.S.C. § 1675, which is not the situation here.

application for a preliminary injunction [56], the plaintiffs seem to disregard the fact that failure of an applicant to sustain its burden of proof on any one of those factors is ground for denial. *See, e.g., American Air Parcel Forwarding Company v. United States*, 6 C.I.T. ——, 573 F.Supp. 117, 122, *aff'd*, 718 F.2d 1546 (Fed.Cir.1983), *cert. denied*, 466 U.S. 937, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984).

Understandably, plaintiffs' papers concentrate on attempting to convince this court that whatever harm they will suffer is of such a nature as to warrant an immediate injunction. But that harm necessary to withstand a motion to dismiss is not sufficient for such extraordinary interim relief unless, as the Supreme Court and other courts have emphasized, it is *"irreparable"*:

> ... Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.[57]

■ The court was not convinced in September that the threat of harm claimed was irreparable, and the application now is even less convincing. If the only ethanol shipments at issue are the five recited above at page 1270, liquidation of duties on the three October entries is now suspended as a result of the ITA preliminary determination. In fact, plaintiffs' proposed form of injunction only seeks to "suspend or otherwise delay liquidation" of the two September entries.[58] The defendants have at least one year from the date of entry to liquidate [59], during which time plaintiffs "fully anticipate that a trial and decision on the merits of this case will be completed"[60]. Indeed, in again denying the plaintiffs a preliminary injunction, this court hereby grants their request for a trial in early December. And the trial (and resultant disposition) will include the importers of the two ethanol entries presently open to liquidation.

## IV

The plaintiffs served the defendants with various requests for discovery, namely, a demand for documents, depositions and interrogatories. In Slip Op. 85–105, this court denied defendants' motion for a protective order and granted plaintiffs' motion, in part, for expedited discovery.

Defendants' counsel have apparently complied with the court's order, for the most part. However, certain documents (or parts thereof) have been withheld, and witnesses at depositions have been directed not to answer certain questions, on the grounds of privilege, which are now chal-

---

**56.** *See* Slip Op. 85–98 *passim*.

**57.** *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1973), quoting from *Virginia Petroleum Jobbers Association v. FPC*, 259 F.2d 921, 925 (D.C.Cir.1958) (emphasis in original).

**58.** Intervenor-defendant RAJ Chemicals contends that the 6.03 million-gallon shipment was landed at Redwood City, California and sold immediately upon entry for retail sale in the California market. *See* Intervenor-Defendant's Memorandum in Opposition to Plaintiffs' Motion for Rehearing of Denial of Preliminary Injunction, pp. 5–6 and appended affidavit of Maulik H. Radia.

The Motion of Citicorp International Trading Company, Inc. for Leave to Intervene shows the 8 million-gallon shipment has been contracted for sale in the southeastern United States.

Plaintiffs' present application fails to show specifically how either one of these September shipments is causing or will cause irreparable injury. At the hearing on September 13, 1985, plaintiff A.E. Staley Manufacturing Company's Vice President testified that the company had already been displaced from the ethanol market in the southeastern United States.

**59.** *See* 19 U.S.C. § 1504 and 19 C.F.R. § 159.11.

**60.** Plaintiffs' Motion for Rehearing of Denial of Preliminary Injunction and Renewed Motion for Preliminary Injunction, p. 9, n. 6. Other than defendants' rejection of the court's suggestion that liquidation be suspended voluntarily pending trial [*see supra*, page 1271], there is no indication that the defendants intend to proceed with liquidation at this time.

lenged by the plaintiffs in motions to compel production of the remaining relevant documents [61] and answers to the deposition questions.

As to the disputed documents, defendants' response has been to withdraw their claim of privilege as to No. 12, thereby providing the plaintiffs with a copy, while delivering to the court under seal for *in camera* inspection the remainder (numbered 13, 19, 53, 54, 60, 70, 90, 111, 116 and 117 [62]). Of this group, redacted versions of all but Nos. 13 and 90 apparently have already been turned over to plaintiffs' counsel.

The defendants assert executive privilege [63] as to each of the documents except for No. 90, citing for support *Zenith Radio Corporation v. United States*, 764 F.2d 1577 (Fed.Cir.1985), *National Latex Products Company v. United States*, 3 CIT 49 (1982), and *Sprague Electric Company v. United States*, 81 Cust.Ct. 168, C.R.D. 78–18, 462 F.Supp. 966 (1978), among other cases. While asserting this privilege, the defendants do note that "factual material is not the subject of a claim of governmental privilege." [64]

Of the documents for which this claim is asserted, only No. 60, which is described by the defendant Commissioner as a "memorandum dated August 1, 1985, from Assistant Secretary (Enforcement and Operations) for Secretary Baker, through Deputy Secretary Darman" [65], appears to the court after *in camera* review and comparison with the Commissioner's affidavit to have been prepared before the date of the contested revocation ruling.[66] The Supreme Court has discussed the significance of the date of decision for a claim of executive privilege as follows:

> Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions. The quality of a particular agency decision will clearly be affected by the communications received by the decision-maker on the subject of the decision prior to the time the decision is made. However, it is difficult to see how the quality of a decision will be affected by communications with respect to the decision occurring after the decision is finally reached; and therefore equally difficult to see how the quality of the decision will be affected by forced disclosure of such communications, as long as prior communications and the ingredients of the decisionmaking process are not disclosed. Accordingly, the lower courts have uniformly drawn a distinction between predecisional communications, which are privileged, ... and communications made after the decision and designed to explain

**61.** The plaintiffs requested documents identified at the depositions. The defendants have requested until November 25, 1985 in which to respond.

**62.** Additionally, Nos. 13, 19, 70 and 111 are claimed to contain business confidential information not subject to public disclosure pursuant to agreement among the parties as to use of such information. *See* note 71 and Part VI, *infra.*

**63.** This privilege is asserted by the defendant Commissioner of Customs in an affidavit sworn to November 1, 1985. Upon a review of this affidavit, which states, among other things, that the affiant personally reviewed the documents and that none had been circulated or disclosed to persons outside the government, the court finds the claim of executive privilege to be properly invoked. *See, e.g., United States v. Reynolds,* 345 U.S. 1, 7–8, 73 S.Ct. 528, 531–32, 97 L.Ed. 727 (1953).

**64.** Defendants' Documents Memorandum, p. 7, n. 5.

**65.** Affidavit of William Von Raab, para. 4(e) (Nov. 1, 1985).

**66.** Document 13 is an undated draft, but it commences by referring to August 2, 1985 as past; No. 19 bears the date "8/13/85"; No. 53 has "Aug. 2 1985" stamped on it [No. 54 is a carbon (unstamped) copy thereof]; No. 70 is dated "8/8/85"; No. 111 is characterized as "[n]otes taken by John Roth, Deputy Director, Classification and Value Division, of a conversation with Mr. Stapp on August 19, 1985" [*id.*, para. 4(g) ]; the cover, transmittal memo of No. 116 is dated September 13, 1985; and No. 117, while undated, refers to the challenged "grandfather provision".

it, which are not.... This distinction is supported not only by the lesser injury to the decisionmaking process flowing from disclosure of postdecisional communications, but also, in the case of those communications which explain the decision, by the increased public interest in knowing the basis for agency policy already adopted.[67]

 Applying this distinction to the documents at hand, the court finds that only No. 60—both in view of its timing as well as its indicated author and recipient(s) and contents (except for the last page, which apparently has been disclosed to plaintiffs' counsel)—is protected from disclosure on the ground of executive privilege. None of the other contested documents, or the redacted portions thereof, qualify for such exemption. That is, they fit the category of "communications made after the decision and designed to explain it, which are not" privileged referred to by the Supreme Court in the foregoing excerpt from its *NLRB* decision.

The defendants argue that document 13, which is comprised of 17 pages and described by the defendant Commissioner as a "draft memorandum prepared by Alfonso Robles, from the Commissioner of Customs to the Secretary of Treasury"[68], is exempt from disclosure in any event on the grounds of attorney-client privilege and/or attorney work product. They also contend that No. 90 is attorney work product.

 The essence of attorney-client privilege is "full and frank communication between attorneys and their clients". *Upjohn Company v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). To the extent the Secretary of the Treasury is the client[69] for whom attorney

Robles drafted document 13, its contents were never communicated to the Secretary according to the Schmitz affidavit, and those contents therefore are not protected from disclosure on the ground of attorney-client privilege. On the other hand, it is clear to the court from a reading of the document that it meets the traditional definition of attorney work product, namely, materials prepared by a lawyer "acting for his client in anticipation of litigation." *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947).

> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.[70]

Document 13 lies within this privileged area.

This is also true of document 90, which is dated within the time of this litigation, which relates to the matters at issue in the action and which was prepared in the name of the Acting Chief Counsel for the Assistant General Counsel.

In summary, the court's review *in camera* of the documents has led it to conclude that Nos. 13, 60 (except for the last page) and 90 are privileged and also that no part of Nos. 19, 53, 54, 70, 111, 116 or 117 is privileged.

Plaintiffs' motion to compel relies, in part, on CIT Rule 26(b)(3) in attempting to convince the court that they have such a substantial need for the privileged documents as to warrant requiring their production. This plea is unconvincing. In fact, their extensive papers on this and the other motions discussed herein reveal a substantial accumulation of information re-

---

67. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151–52, 95 S.Ct. 1504, 1516–17, 44 L.Ed.2d 29 (1975) (citations and footnotes omitted).

68. Affidavit of William Von Raab, para. 4(a) (Nov. 1, 1985). The affidavit of Michael T. Schmitz, Acting Chief Counsel of the Customs Service, apparently sworn to November 7, 1985, characterizes the document's author as a "general attorney" in the Office of the General Counsel.

69. It has been held that a federal agency can be a "client" and that agency lawyers can function as "attorneys" within the relationship contemplated by the privilege. *E.g., Coastal States Gas Corporation v. Department of Energy*, 617 F.2d 854, 863 (D.C.Cir.1980).

70. *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975).

garding the matters at issue. Moreover, while this court has permitted the plaintiffs necessary and appropriate discovery per Slip Op. 85–105 on the basis that no absolute privilege attaches to the administrative decision-making process, this ruling was not a predetermination that no element of that process could be beyond discovery on the ground of executive privilege, nor was it to be interpreted as a blanket overruling of the privileges attaching to the legal advice and litigation work of attorneys.

With the court's determination to order the defendants to disclose to plaintiffs' counsel the redacted parts of documents 19, 53, 54, 70, 111, 116 and 117[71], defendants' contingent request is that this determination be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(d)(2) on the ground, among others, that "an immediate appeal would materially advance the termination of this litigation."[72]

Review of the documents, however, makes this assertion difficult to accept. Furthermore, the court notes that in *Zenith Radio Corporation v. United States*, 7 C.I.T. ——, 588 F.Supp. 1443 (1984), *rev'd*, 764 F.2d 1577 (Fed.Cir.1985), the trial judge granted the government's request for immediate appellate review of his order requiring disclosure of allegedly privileged documents and information. The matter was certified on August 8, 1984, and the circuit court permitted the appeal on August 30th. But that court's decision was handed down on June 19, 1985.

■ Of course, overruling claims of privilege is a serious matter—one which requires the greatest of care on the part of a court. But a court is also responsible for supervising orderly proceedings—in the interests of justice and fairness to all parties.

Here, those interests would not be best served by granting defendants' motion, which therefore must be denied in the exercise of sound discretion.[73]

## V

The Deputy Director of the Classification and Value Division of the Customs Service appeared for deposition by the plaintiffs on October 15 and 16, 1985. On October 21st, the Director of that division was deposed by plaintiffs' counsel.

During those depositions, defendants' counsel directed the witnesses not to answer certain questions. The plaintiffs now move to compel answers to them. In response to the motion, defendants' counsel have withdrawn their objections to some of the questions[74], while arguing that the remaining questions "were objectionable because they invaded areas which are exempt from discovery on the grounds of Governmental privilege"[75], citing *Zenith Radio Corporation v. United States*, 764 F.2d at 1580:

> ... The executive privilege, which has been analogized to the work product privilege, protects agency officials' deliberations, advisory opinions and recommendations in order to promote frank discussion of legal or policy matters in the decisionmaking process.

The precise issue in that case was whether the government had waived its privilege as to certain documents. In concluding that the trial court erred in ordering their production, the Federal Circuit indicated, however, that the information requested was subject to determination on deposition as follows:

> The question whether the government was entitled to recover interest under the

---

**71.** The court agrees with the defendants that Nos. 19, 70 and 111 contain business confidential information to be disclosed to counsel only pursuant to protective order. *See* Part VI, *infra*.

Having completed its review *in camera,* the court will reseal the contested documents in the envelopes in which they were delivered, and it will direct the Clerk to maintain them under that seal under further order.

**72.** Defendants' Documents Memorandum, p. 15.

**73.** In denying the motion for certification, the court also denies defendants' request for a ten-day stay in which to perfect an appeal.

**74.** *See* Defendants' Depositions Memorandum, p. 2.

**75.** *Id.* at 3 (footnote omitted).

settlement agreements is an issue of law, the answer to which turns upon an interpretation of those agreements.... If the views of the parties to or the drafters of the settlement agreements are pertinent to the resolution of that legal issue ... Zenith has not given any convincing reason why it could not obtain that information by deposing those individuals. 764 F.2d at 1580.

The opportunity to take depositions of such individuals, however, is not an automatic grant to discover that information which is genuinely privileged. On the other hand, as this court indicated in Slip Op. 85–105, the defendants have yet to present formal administrative findings upon which the contested revocation ruling was based, and, in the absence of such findings, "it may be that the only way there can be effective judicial review is by examining the decisionmakers themselves." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825–26, 28 L.Ed.2d 136 (1971).

▬ Upon review and reflection, this court concludes that the questions contested by defendants' counsel led, with few exceptions, to erroneous directions to the witnesses not to answer on the ground of privilege. Questions such as "Would you elaborate on what you mean by reliance?" [76] and "By what date must they have entered into the business negotiations, the relevant business negotiations?" [77] and "What is your understanding of the factors that influenced the Service's case-by-case determination?" [78] hardly are aimed at the heart of the process which resulted in the August 2, 1985 agency decision. Reliance, for example, is an issue which that decision has created, and which is independent of any role it may have played in reaching the decision.

Specifically, the plaintiffs are entitled to answers from deponent Roth to each of the foregoing questions, as well as to each of the following questions: p. 48, lines 15–18 [79]; p. 126, lines 8–10; p. 131, lines 4–6; p. 133, lines 19–22; p. 199, lines 17–20; p. 200, lines 2–6 and 10–13; p. 212, line 13; p. 214, lines 2–7; p. 217, line 20 to p. 218, line 1; p. 218, line 21 to p. 219, line 3; p. 220, line 20 to p. 221, line 1; p. 221, lines 5–7 and 11–14; p. 254, line 19 to p. 255, line 2; p. 255, line 7; p. 255, line 22 to p. 256, line 1; p. 271, lines 9–13; p. 279, lines 11–12; p. 296, lines 17–19; p. 299, lines 19–21; p. 302, lines 12–18; and p. 303, lines 5–8. In fact, a question [p. 299, line 6] which resulted in a proper direction not to answer was aimed at attorney-client advice and not executive privilege.

After review of the transcript of the deposition of deponent Fox, the court concludes that the plaintiffs are entitled to answers to each of the following questions: p. 62, line 17 [80]; p. 63, line 21 to p. 64, line 1; p. 64, lines 4–7; p. 68, lines 1–3, 7–9, 12–13 and 17–19; p. 68, line 22 to p. 69, line 3; p. 79, lines 6–7; p. 91, lines 14–15; and p. 98, line 14.

As with the decisions in Parts I and IV, above, the defendants request certification pursuant to 28 U.S.C. § 1292(d)(2) because, they allege, answering the foregoing questions "would result in irreparable injury to the Government." [81] The court cannot concur in this prediction, and the motion and concomitant request for a stay to perfect an appeal must therefore be denied.

## VI

The defendants have produced confidential business information to the plaintiffs and intervenor-defendant RAJ Chemicals on the basis of confidentiality agreement(s) among counsel. The defendants have filed a motion for a protective order, incorporat-

**76.** Appendix B to Plaintiffs' Supplemental Memorandum, p. 125, line 12.

**77.** *Id.,* p. 213, lines 9–10.

**78.** *Id.,* p. 279, lines 11–12.

**79.** Such references are to Appendix B to Plaintiffs' Supplemental Memorandum.

**80.** Such references are to Appendix D to Plaintiffs' Supplemental Memorandum.

**81.** Defendants' Depositions Memorandum, p. 7.

ing the terms and conditions of their agreement(s). The motion is granted, and their revised proposed form of order will be entered.[82]

Citicorp International Trading Company, Inc. has brought a motion to intervene in this action as a party defendant pursuant to CIT Rule 24, subsection (a) of which provides, in part:

> Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by the parties.

The proposed intervenor appears to meet this criterion, and its motion is granted, subject, however, to strict adherence to the representation in the papers that "Citicorp will not delay or prejudice adjudication of the rights of the original parties" and "will not seek to delay or duplicate any of the discovery already under way" in view of the timing of the motion.

The Commonwealth of Kentucky, by its Attorney General, has filed a motion for leave to submit a brief as *amicus curiae.* In granting the motion, the court construes it to be in connection with trial of this action.

* * * * * *

Now, therefore, in view of the foregoing, it is

ORDERED that defendants' motion to dismiss the complaint be, and it hereby is, denied; and it is further

ORDERED that the motion of intervenor-defendant RAJ Chemicals, Inc. to dismiss the complaint be, and it hereby is, denied; and it is further

ORDERED that defendants' motion for certification of an interlocutory appeal from the court's denial of their motion to dismiss the complaint be, and it hereby is, denied; and it is further

ORDERED that plaintiffs' motion for rehearing and a preliminary injunction be, and it hereby is, denied; and it is further

ORDERED that plaintiffs' motion to compel production of documents be, and it hereby is, granted in part and denied in part as per Part IV of the foregoing opinion; and it is further

ORDERED that defendants' motion for certification of an interlocutory appeal from the court's decision of plaintiffs' motion to compel production be, and it hereby is, denied; and it is further

ORDERED that plaintiffs' motion to compel answers to certain deposition questions be, and it hereby is, granted in part and denied in part as per Part V of the foregoing opinion; and it is further

ORDERED that defendants' motion for certification of an interlocutory appeal from the court's decision of plaintiffs' motion to compel answers be, and it hereby is, denied; and it is hereby further

ORDERED that defendants produce to the plaintiffs the aforesaid documents and answers on or before December 4, 1985; and it is hereby further

ORDERED that the Clerk maintain under seal until further order of the court those documents submitted to it for *in camera* review by the defendants; and it is further

ORDERED that defendants' motion for a protective order as to confidential business information be, and it hereby is, granted; and it is further

ORDERED that the motion of intervenor-defendant RAJ Chemicals, Inc. for a protective order as to confidential business

---

**82.** Both intervenor-defendant RAJ Chemicals and intervenor-defendant Certified Oil Company have filed motions for orders providing particular protection for their respective commercial documents and information. The court is of the view that entry of, and strict adherence to, defendants' proposed order will adequately cover their concerns, and the motions of those two intervenor-defendants are therefore denied.

information be, and it hereby is, denied; and it is further

ORDERED that the motion of intervenor-defendant Certified Oil Company for a protective order as to confidential business information be, and it hereby is, denied; and it is further

ORDERED that the motion of Citicorp International Trading Company, Inc. for leave to intervene as a party defendant be, and it hereby is, granted; and it is further

ORDERED that the motion of the Commonwealth of Kentucky for leave to file a brief *amicus curiae* be, and it hereby is, granted; and it is hereby further

ORDERED that trial of this action commence in New York City at 10 a.m. on the 9th day of December 1985.