RICHARDS MEDICAL
COMPANY, Plaintiff,

v.

The UNITED STATES, Defendant.

Court No. 84–10–01337.

United States Court of
International Trade.

June 27, 1989.

Pravel, Gambrell, Hewitt, Kimball & Krieger, Paul E. Krieger, Lester L. Hewitt, Houston, Tex., and Eugene R. Montalvo, and Brumbaugh, Graves, Donohue & Raymond; Edward V. Filardi, New York City, for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty.–in–Charge, New York City, Intern. Trade Field Office, Kenneth E. Wolf, Dept. of Justice, Civ. Div., Commercial Litigation Branch.

WATSON, Judge:

Plaintiff Richards Medical Company ("Richards") contests the decisions of the United States Customs Service (Customs) to classify certain medical instruments under item 709.27, Tariff Schedule of the United States ("TSUS"), rather than item 960.15, TSUS. The parties submitted an agreed Stipulation of Facts in lieu of trial (Stipulation). The Court has jurisdiction under 28 U.S.C. § 1581(a) (1982).

BACKGROUND

Richards imported the hip prostheses along with separately packaged instruments, which "were specially designed for use to prepare the hip joint implantation and to implant the Prosthetic Systems into the supporting bone structure." (Stipulation at 2).

The prosthetic systems were classified by Customs under duty-free item 960.15, TSUS.[1] The instruments were classified under item 709.27, TSUS, the basket provision for medical, dental, surgical and veterinary instruments. Richards filed two timely protests arguing that the instruments should also be classified under item 960.15, TSUS, along with the prosthetic devices themselves.

According to Richards, Customs denied the protests because "1) the handicapped person did not directly benefit from the instruments and the instruments were only remotely related to the individual; 2) the medical procedures associated with the instruments were therapeutic and thereby excluded under the headnotes to item 960.-15 TSUS".[2]

Defendant filed a cross-motion for summary judgment arguing that the instruments are precluded from duty-free importation under item 960.15, TSUS, because they fall under the headnote 2(b)(iii) exclusion for "therapeutic" articles. Aside from the exclusion for therapeutic articles, defendant argues that these instruments are not classifiable under item 960.15, TSUS, because they are not generally of the type designed to enable physically impaired individuals to adapt to their handicap as intended by Congress under this provision of the statute. Defendant argues that these instruments are used by surgeons, rather than by the handicapped persons, "to eliminate or lessen the disease which causes physical handicap itself."[3]

---

1. Appendix to the Tariff Schedules Part 4—Temporary Duty Reductions Pursuant to the Educational, Scientific, and Cultural Materials Act of 1982.

 *Part 4 headnotes*

 1. An article described in any of the provisions of this part, if entered during the period specified in the last column, is classifiable in said provision, if the conditions and requirements thereof and of any applicable regulations are met. The provision of this part shall prevail over any provision describing such article in schedules 1 to 8 inclusive.

 2. for the purpose of items 960.10, 960.12, and 960.15—

 (a) The term *"physically or mentally handicapped persons"* includes any person suffering from a permanent or chronic physical or mental impairment which substantially limits one or more major life activities, such as caring for

one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

 (b) These items do not cover—
 (i) articles for acute or transient disability;
 (ii) spectacles, dentures and cosmetic articles for individuals not substantially handicapped;
 (iii) therapeutic and diagnostic articles;
 (iv) medicines or drugs.

 Articles specially designed or adapted for the use or benefit of the blind or other physically or mentally handicapped persons (however provided for in schedules 1 to 7):
 960.15 Other ...

2. Plaintiff's Motion for Summary Judgment, at 3–4.

3. Defendant's Response to Plaintiff's Motion for Summary Judgment and Memorandum of Law

## OPINION

The central and dispositve issue in this action is whether the instruments in question are "therapeutic" articles which do not qualify for duty-free treatment pursuant to the Educational, Scientific, and Cultural Materials Act of 1982.

Resolution of this issue disposes of the defendant's general argument that the instruments in question are not covered under item 960.15, TSUS, because they are designed to lessen or eliminate the disease, rather than enable a person to adapt to the handicap.

Defendant no longer maintains the distinction made by Customs when it granted duty-free treatment of the prosthesis, but denied it with regard to the instruments. Defendant is now contending that *both* articles are therapeutic and that "the prosthetic systems themselves should *not* have been liquidated duty-free under item 960.-15, TSUS, but in fact should have been dutiable." [4]

 The Court finds that the term "therapeutic" distinguishes articles, which are used to heal the condition causing a handicap, from those duty-free articles which are designed to compensate for, or adapt to, the handicapped condition. The Court concludes that Congress' intent to limit the duty-free treatment only to those articles which help handicapped persons to adapt to their handicapped condition is clearly expressed and fully implemented by the statutory exemption for therapeutic articles.

The Court does not accept defendant's contention that medical instruments, which are used exclusively in implanting the prosthesis, are therapeutic articles. The common meaning of the word "therapeutics" is "healing or curative medicine" [5], and the term "therapeutic" is defined as "[h]aving healing or curative powers" [6]. The word

"medicinal" is also defined as "curing, healing, or relieving". *Id.* The following explanation of the scope of therapeutics is provided in *The New Encyclopedia Britannica:*

The scope of therapeutics is broad, as indicated by the many types of therapy. Included are surgical therapy, the correction or removal of diseased tissues by surgical operation; biologic therapy, which involves the use of biologic products, such as serums, vaccines, and antitoxins; chemotherapy, the use of pure chemicals to attack specific diseases; diathermic therapy, the use of high-frequency electrical equipment; radiation therapy, the use of X-rays and radioactive isotopes to destroy diseased tissues; and endocrine therapy, the use of hormones.

It is obvious that the scope of therapeutics, however broad, comprises only a branch of medicine, and it does not extend to all medical procedures. A distinct common feature of therapeutic medicine is its purpose of complete or partial elimination of the disease. It is, therefore, necessary to establish a healing and curative purpose of a particular medical procedure in order to qualify it as therapeutic.

Notwithstanding the ideal goal of medicine to cure all diseases, not every medical procedure is therapeutic, or intended to heal or cure the disease. Unfortunately, there are permanent or chronic diseases affecting major life activities, which are not curable. The medical procedures which are designed to relieve the discomfort caused by the disease, rather than to cure it, are not therapeutic.

The plain language and construction of the law demonstrate clearly that Congress did not intend to exclude all medical devices from the duty-free treatment under this provision of the statute, but carefully chose

in Support of Cross–Motion for Summary Judgment (Defendant's Cross–Motion"), at 11.

**4.** Defendant's Cross–Motion at 9, footnote 1, emphasis in original.

**5.** *Webster's New International Dictionary,* Second Edition, Unabridged.

**6.** *The American Heritage Dictionary,* New College Edition

to carve this exclusion only for certain types of medical devices, such as therapeutic and diagnostic articles.

The parties do not dispute that the instruments and the prosthetic systems are not used to heal the handicapped persons, or to cure the disease which caused their handicap:

10. The Prosthetic Systems are implanted in physically handicapped persons in order to improve their ability to walk or even to allow them to walk when they were severely crippled prior to implantation ...

Stipulation, at 4.

■ Defendant's argument that the implantation of the artificial hip systems in the handicapped individuals "eliminate or lessen the disease which caused physical handicap itself" is simply not accurate. It contradicts the stipulated fact that these prosthetic implantations are performed because of the incurable nature of the disease, and that they are designed to improve the handicapped persons' ability to walk, without curing their disease. The advance of medicine which allows implantation of the prosthetic devices within the body of handicapped persons, instead of their exterior applications, does not convert the prosthetic devices into therapeutic articles. The established purpose of the prosthetic hip implantations in question is to relieve the discomfort of, or artificially compensate for, the handicapped condition, rather than to cure it. In the opinion of the Court, the replacement of the hip joint with a prosthetic device is a compensatory remedy of a disability and not a therapy. The Court finds that the instruments, which are used to improve the handicapped persons' ability to walk, without removing, eliminating, or lessening the disease which caused their handicapped condition, are not therapeutic.

Defendant's argument that the exclusive use of these instruments by surgeons makes them "clearly therapeutic", would interpret out of existence the statutory distinction between therapeutic articles and other medical devices. The Court does not agree that every article used by a medical doctor or surgeon is automatically therapeutic.

Finally, the fact that the handicapped persons themselves do not use these instruments, or that they do not remain in the body of the person, does not preclude classification of the instruments under item 960.15, TSUS, because Congress specifically provided that the eligible articles should be "designed or adapted for the use or benefit of the ... handicapped persons". There is no dispute that the instruments in question are specifically designed for the *benefit* of handicapped persons.

Defendant's reliance on the restrictive language from the legislative history is misplaced. The legislative intent to preclude "incentives for commercially motivated tariff avoidance schemes and pre-import and post-entry manipulations" is not applicable in this case.[7] The instruments are specifically and exclusively designed for prosthetic implantations and have no other apparent commercial use. Congress' concern with regard to possible circumventions of tariff duties through manipulations shall not be used to restrict duty-free importation of the articles which are not subject to any manipulations, and which qualify for duty-free importation as originally designed.

The Court finds that plaintiff has met the burden of overcoming the presumption of correctness of government's classification. The instruments in question are not therapeutic articles and, therefore, they do qualify for duty-free treatment under item 960.15, TSUS.

SO ORDERED.

### JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision,

IT IS HEREBY ORDERED, ADJUDGED and DECREED: that the merchandise imported under cover of the en-

7. Defendant's Cross–Motion at 10–11.

tries that are the subject of this action qualify for duty free allowance under item 960.15 TSUS; and it is further

ORDERED, ADJUDGED and DE-CREED: that the United States Customs Service shall reliquidate the entries in accordance with item 960.15, TSUS, and shall refund any excess duties paid together with interest, as provided by law.