**STARKEY LABORATORIES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Slip Op. 98–44.
Court No. 91–02–00132.

United States Court of International Trade.

April 10, 1998.

Coleman, Hull & van Vliet (Ronald J. Rasley), Minneapolis, MN, for Plaintiff.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, U.S. Department of Justice, Civil Division (Barbara Silver Williams); and Office of Assistant Chief Counsel, U.S. Customs Service (Chi S. Choy), of counsel, Washington, DC, for Defendant.

*Opinion*

AQUILINO, Judge.

In this action, which has been designated a test case within the meaning of CIT Rule 84(b), the plaintiff has interposed a motion for summary judgment, declaring that its predicate merchandise should have entered the United States free of duty as articles specially designed or adapted for the use or benefit of physically-handicapped persons within the meaning of item 870.67 of the Tariff Schedules of the United States ("TSUS") or subheading 9817.00.9600 of the Harmonized Tariff Schedule of the United States ("HTS"), depending upon individual dates of entry. The U.S. Customs Service denied such classification, and the defendant has filed a cross-motion for summary judgment, dismissing this case on the ground of failure to state a claim upon which relief can be granted in that plaintiff's goods were parts rather than complete entities and thus not entitled to be entered duty free.

I

The parties take the position that there are no material facts as to which there is a genuine issue to be tried. Instead, they have stipulated the facts to be the following, among others:

1. Starkey Laboratories, Inc. ("Starkey") is a hearing aid manufacturer. . . .

* * *

5. Starkey is the importer, actual owner and ultimate consignee of the merchandise that is the subject matter of the action[ ]. Starkey has paid all duties, merchandise processing fees and other charges on the entries. . . .

* * *

10. As part of its manufacturing process, Starkey imports the various articles that are incorporated as sub-assemblies or components of its hearing aid products. The merchandise in question is specifically designed or adapted for use in hearing aids. These articles include[,] inter alia, potentiometers, trimmers, variable resistors, coils, microphones, receivers, hearing aid body parts and hearing aid sub-assemblies that include microphones or receivers.

The merchandise in question is used in hearing aids because of the following design limitations:

(a) The ear canal is a warm humid environment. Thus, the merchandise must be humidity and moisture resistant.

(b) The ear canal also imposes size restrictions on components. Thus, the merchandise must be manufactured to fine tolerances.

(c) Hearing aids need low power consumption to prolong battery life. The microphone, receivers and other components that use power are used in hearing aids because of their power consumption designs.

11. The articles in the protested entries are parts of hearing aids.

* * *

14. Deafness or the condition of being hard of hearing[ ] is a handicap or a condition of "permanent or chronic physical or mental impairment which substantially limits one or more major life activities, such as caring for one's self, performing manual tasks, walking, seeing, *hearing,* . . ."[.] . . .

15. A hearing aid helps a deaf person or hearing impaired person adapt or adjust to the chronic or permanent condition of being deaf or hard of hearing. A hearing aid does not cure deafness and, therefore, it is neither therapeutic nor diagnostic.

16. Pursuant to the Service's ruling letter dated July 25, 1984, Document No. 074506/807732, . . . [it] previously permitted the duty-free entry of hearing aid parts pursuant to TSUS 960.15, which is identical to TSUS 870.67 and HTS 9817.00.9600.

Emphasis in original para. 14, citation therein omitted.

After review of all the evidence submitted, the court concurs that trial is not necessary. Any disagreements can be resolved via the cross-motions for summary judgment, which posit dispositive substantive issues that are essentially legal in nature.

Jurisdiction is pursuant to 28 U.S.C. § 1581(a) and § 2631 *et seq.*

### A

As the parties indicate in their papers, Congress enacted the Educational, Scientific, and Cultural Materials Importation Act of 1982, Pub.L. No. 97–446, Title I, Subtitle B, § 161(b), 96 Stat. 2329, 2346 (1983), to "enable the United States to give effect to the Nairobi Protocol to the Florence Agreement on the Importation of Educational, Scientific, and Cultural Materials".[1] Section 165 of that subtitle eliminated duties on articles specially designed or adapted for the use or benefit of the blind or other physically or mentally handicapped persons by amending Part 7 of TSUS Schedule 8. In 1988, Congress passed the Omnibus Trade and Competitiveness Act,

1. The Protocol, which went into effect January 2, 1982, 1259 U.N.T.S. 2, broadened the scope of the Florence Agreement on the Importation of Educational, Scientific and Cultural Materials, *opened for signature* November 22, 1950, T.I.A.S. No. 6129, 17 U.S.T. 1835, 131 U.N.T.S. 25, by embracing technologically-new articles and previously-uncovered works of art, films etc.

Pub.L. No. 100–418, 102 Stat. 1107, section 1121 of which further provided for implementation of the Nairobi Protocol, among other things, by repealing the 1982 act but by including the same provisions of that statute in Part 7 of TSUS Schedule 8, numbered as items 870.65, 870.66 and 870.67, to wit:

Articles specially designed or adapted for the use or benefit of the blind or other physically or mentally handicapped persons:

Articles for the blind:

| | | |
|---|---|---|
| 870.65 | Books, music, and pamphlets, in raised print, used exclusively by or for them | Free |
| 870.66 | Braile tablets, cubarithms, and special apparatus, machines,presses, and types for their use or benefit exclusively | Free |
| 870.67 | Other | Free [2] |

These provisions in the TSUS (and in the HTS) have been conditioned upon the following headnote:

(a) For the purposes of [these] items . . ., the term "blind or other physically or mentally handicapped persons" includes any person suffering from a permanent or chronic physical or mental impairment which substantially limits one or more major life activities, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

(b) Items 870.65, 870.66, and 870.67 [and sub-headings 9817.00.92, 9817.00.94 and 9817.00.96] do not cover—

(i) articles for acute or transient disability;

(ii) spectacles, dentures, and cosmetic articles for individuals not substantially disabled;

(iii) therapeutic and diagnostic articles; or

(iv) medicine or drugs. 102 Stat. 1141–42.

**B**

The defendant does not claim that plaintiff's goods are encompassed by any of the foregoing enumerated exceptions, nor does it take the position that deaf persons are not physically-handicapped within the meaning of the statute. Rather, it contends that plaintiff's parts and subassemblies are not "articles" *viz.*:

. . . Starkey ignores the basic premise of Customs law that parts of an article and the article itself are deemed to be separate and distinct . . . for classification purposes. . . . Here, the plain face of the statute shows that only **articles** specially designed or adapted for the use or benefit of the handicapped are classified under 870.67, TSUS. No provision specifies that parts are to be included. Because it is uncontested that the merchandise at issue was imported for use as **parts** of hearing aids, Starkey's merchandise cannot be classified under 870.67, TSUS.[3]

The defendant also points to General Interpretive Rule 10(ij) of the TSUS, which stated that

---

**2.** *See* Pub.L. No. 100–418, § 1121(b) and (f), 102 Stat. at 1138, 1141–42. Section 1121(f) followed the re-promulgation of the TSUS by the U.S. International Trade Commission after adoption of the 1982 act in making the "Other" item (870.67) equal, rather than subordinate, to the articles for the blind encompassed by items 870.65 and 870.66. *Compare* 102 Stat. 1142 *with* 96 Stat. 2347 *and* USITC Pub. 1317, p. 829–2 (2d Supp. April 8, 1983).

**3.** Defendant's Memorandum, pp. 7–8 (citations and footnote 8 omitted; emphasis in original).

a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

Whereupon it argues that the

fact that Congress enacted headnotes to Schedule 8 without including a headnote to counteract General Interpretive Rule 10(ij) is also compelling evidence in favor of the Government. The absence of a headnote shows that Congress ... did not intend to nullify Rule 10(ij), and parts are properly classified under their specific provisions rather than under any Schedule 8 general provision which may include parts. Alternatively, Congress felt adoption of such a headnote was unnecessary because parts are not ever included within the general provisions in dispute; they are in-stead classifiable only under their specific descriptions....[4]

This court cannot concur. While it is well-established that an *eo nomine* provision which does not specifically provide for parts does not include them[5], the controlling language at bar is not such a provision. On its face, it is generic, and the above-quoted TSUS general interpretative rule does not apply. Moreover, to the extent plaintiff's merchandise entered this country after the HTS had gone into effect, its U.S. rule of interpretation 1(c) is conditioned upon "the absence of special language or context". Here, there is no competing "parts" provision[6], and the context is articles specially designed or adapted for the use or benefit of deaf persons.

The evidence shows, and the court finds, that plaintiff's goods have been so designed or adapted. And neither the legislated lan-guage nor the defendant shows that Congress intended to preclude such goods from the benefit of TSUS items 870.60 or 870.67 or HTS subheading 9817.00.9600. Indeed, Congress adapted headnotes to both TSUS Schedule 8 and HTS Chapter 98, waiving application of the rule of specificity, which otherwise could have caused classification of plaintiff's microphones or receivers, for example, under other tariff sections. And this court has found that Congress has opted for "more liberalized treatment" in its enactments based upon the Nairobi Protocol. *Travenol Laboratories, Inc. v. United States,* 17 CIT 69, 77, 813 F.Supp. 840, 847 (1993). *See also Nobelpharma U.S.A. Inc. v. United States,* 21 CIT ——, ——, 955 F.Supp. 1491, 1498–99 (1997)("what constitutes 'handicapped' under the Nairobi Protocol appears to be very broad and subject to liberal interpretation", quoting *U.S. Customs Service Implementation of the Duty–Free Provisions of the Nairobi Protocol, Annex E, to the Florence Agreement* Interpretive Rule, T.D. 92–77, 26 Cust.Bull. 240, 246 (1992)). In *Nobelpharma,* the court held oral osseoimplant parts and tools entitled to duty-free entry under the same provision(s) at issue herein. And the court concludes that the reasoning in that case also applies to this case. *Cf.* Defendant's Memorandum, p. 3, n. 3.

II

In view of the foregoing, plaintiff's motion for sum-mary judgment should be granted, and defendant's cross-motion must therefore be denied. Judgment will enter accordingly.

*JUDGMENT*

This case having been duly submitted for decision; and the court, after due delibera-

---

4. *.Id.* at 11. While stipulating that Customs, per its ruling letter of July 25, 1984, did grant duty-free entry for hearing-aid parts, the defendant claims that that

   ruling is irrelevant to the case at bar because it was expressly limited to merchandise under 960.15, TSUS, a temporary provision permitting entry of merchandise duty free only until August 11, 1985. After the permanent provision, 870.67, TSUS, was enacted, Customs re-examined the issue and rejected the decision in HRL 807732.

   *Id.* at 8, n. 9, citing subsequent Headquarters ruling letter 087559 (Oct. 9, 1990).

5. *See, e.g., Westminster Corp. v. United States,* 78 Cust. Ct. 22, 26, 432 F.Supp. 1055, 1058, C.D. 4687 (1977); *Glass Products, Inc. v. United States,* 10 CIT 253, 255, 641 F.Supp. 813, 815 (1986).

6. *See, e.g., Nobelpharma U.S.A. Inc. v. United States,* 21 CIT ——, ——, 955 F.Supp. 1491, 1501 (1997) (government conceded "tariff provisions here do not involve a competition between a parts provision and a specific *eo nomine* provision").

tion, having rendered a decision herein; Now therefore, in conformity with said decision, it is

ORDERED, ADJUDGED and DE-CREED that plaintiff's motion for summary judgment be, and it hereby is, granted in that the hearing-aid articles which are the basis of this case are correctly classifiable under item 870.67 of the Tariff Schedules of the United States or subheading 9817.00.9600 of the Harmonized Tariff Schedule of the United States depending on their dates of entry; and it is further

ORDERED, ADJUDGED and DE-CREED that defendant's cross-motion for summary judgment be, and it hereby is, denied; and it is further hereby

ORDERED that the U.S. Customs Service reliquidate the entries which are the basis of this case under the aforesaid TSUS or HTSUS provisions depending upon their respective dates and refund to the plaintiff any duties paid, together with interest thereon as provided by law.