Slip Op. 00 - 69

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - x

STARKEY LABORATORIES, INC.,          :

                Plaintiff, :

      v.                           :    Court No. 91-02-00132

                       :

UNITED STATES,

                       :

               Defendant.

                       :

- - - - - - - - - - - - - - - - - - x


Opinion & Order

[Defendant's motion for rehearing on classifica-
 tion of hearing-aid elements granted, in part.]

                       Dated:  June 19, 2000

    Curtin & Steingart, P.A. (Ronald J. Rasley) for the plain-tiff.


    David W. Ogden, Acting Assistant Attorney General; Joseph  I.
Liebman, Attorney in Charge, International Trade Field Office,
Commercial Litigation Branch, Civil Division, U.S. Department    of
Justice (Barbara S. Williams); and Office of Assistant Chief Counsel,
U.S. Customs Service (Chi S. Choy), of counsel, for the defendant.


      AQUILINO, Judge:  The defendant has interposed a Mo-tion
for Rehearing, Modification, and/or Reconsideration of this court's
opinion and judgment herein, reported at 22 CIT ___, 6 F.Supp.2d 910
(1998), familiarity with which is presumed, and which will be re-
ferred to hereinafter as slip op. 98-44.  That opinion concluded that

various hearing-aid elements were proper-ly classifiable under item

870.67 of the Tariff Schedules of the United States ("TSUS") or

subheading 9817.00.9600 of the Harmonized Tariff Schedule of the

United States ("HTSUS"), depending upon their times of entry, and

were therefore free of duty as "articles specially designed or

adapted for the use or benefit  of the handicapped".

                                        I

     A fact stipulated by the parties was that the "articles in

the protested entries are parts of hearing aids."  22 CIT at    ___

and 6 F.Supp.2d at 911, para. 11.  The crux of defendant's instant

motion is stated to be that, after submission of the papers in

support of the parties' cross-motions for summary judgment, which

slip op. 98-44 then addressed,

>     Presidential Proclamation 6821 . . . issued which ex-
>     pressly amended the language of subheading 9817.00.96 to
>     include "parts and accessories (except parts and accesso-
>     ries of braces and artificial limb prosthetics) that are
>     specially designed or adapted for use in the foregoing
>     articles."  . . .
>
>     This explicit addition to . . . 9817.00.96, HTSUS, to
>     state that the provision now includes parts estab-lishes
>     that the provision did not originally cover parts of
>     articles for the handicapped, because if the provision
>     previously included parts, there would have been no need
>     for the amendment.

Defendant's Memorandum, p. 4 (citation omitted).  In making this

motion, counsel do note for the record that they

>     had a continuing obligation to keep the Court informed of
>     material developments that might assist the Court  in

reaching the correct result. Customs apparently did not connect the importance of the statutory change dis- cussed in this motion to the pending litigation until the Court issued its opinion; we regret this lapse in focus.  We do not know why Starkey also did not advise the Court of this development.

Id. at 3, n. 1.

A

The grant of a motion for rehearing made pursuant to CIT

Rule 59, which provides, <u>inter</u> <u>alia</u>, for the opening of judgments and

amending of conclusions of law in cases such as this, lies

> within the sound discretion of the court. <u>Kerr-</u> <u>McGee</u>
> <u>Chem. Corp. v. United States</u>, 14 CIT 582,     583
> (1990); <u>Union Camp Corp. v. United States</u>, 21    CIT 371,
> 372, 963 F.Supp. 1212, 1213 (1997).  The purpose of a
> rehearing is not to relitigate a case.  See <u>BMT Commodity</u>
> <u>Corp. v. United States</u>, 11 CIT    854, 855, 674 F.Supp.
> 868, 869 (1987).  Rather, a rehearing only serves to
> rectify "a significant    flaw in the conduct of the
> original proceeding."    <u>W.J. Byrnes & Co. v. United</u>
> <u>States</u>, 68 Cust.Ct. 358, 358 (1972) (footnote omitted).
> Importantly, the   court will not disturb its prior deci-
> sion unless it   is "manifestly erroneous." <u>United States</u>
> <u>v. Gold</u> <u>Mountain Coffee, Ltd</u>., 8 CIT 336, 337, 601 F.Supp.
> 212, 214 (quoting <u>Quigley & Manard, Inc. v. United States</u>,
> 61 C.C.P.A. 65, 496 F.2d 1214 (1974)).  . . .

<u>Volkswagen of America, Inc. v. United States</u>, 22 CIT ___, ___,    4

F.Supp.2d 1259, 1261 (1998).  <u>See</u> <u>also</u> <u>NEC Corp. v. Dep't of Com-</u>

<u>merce</u>, 24 CIT ___, ___, 86 F.Supp.2d 1281, 1282 (2000); <u>Union Camp</u>

<u>Corp. v. United States</u>, 21 CIT 371, 372, 963 F.Supp. 1212, 1213

(1997); <u>Intercargo Ins. Co. v. United States</u>, 20 CIT 951, 952, 936

F.Supp. 1049, 1050 (1996), <u>aff'd</u>, 129 F.3d 135 (Fed.Cir. 1997).

On its face, defendant's motion appears to raise an issue

of whether or not slip op. 98-44 contains a "significant flaw" or is

even "manifestly erroneous". Hence, the motion should be, and it

hereby is, granted -- for careful consideration of defendant's above-quoted proposition that the effect of Proclamation 6821 was to establish that HTSUS subheading 9817.00.96 did not originally cover parts of articles for the handicapped.

                                    B

        The starting point for such consideration is the President's Proclamation itself, which was published at 60 Fed.Reg. 47,663 et seq. (Sept. 13, 1995) sub nom. To Establish a Tariff-Rate Quota on Certain Tobacco, Eliminate Tariffs on Certain Other Tobacco, and for Other Purposes.  It states in part:

> 6.  Presidential Proclamation No. 6763 of December  23, 1994, implemented the Uruguay Round Agreements, including Schedule XX, with respect to the United States and incorporated in the HTS tariff modifica-tions necessary and appropriate to carry out the  Uruguay Round Agreements. Certain technical errors, including inadvertent omissions and typographical errors, were made in that proclamation. I have de-cided that, in order to reflect accurately the in-tended tariff treatment provided for in the Uruguay Round Agreements, it is necessary to modify certain provi-sions of the HTS, as set forth in Annex II to  this proc-lamation.

60 Fed.Reg. at 47,664.  Paragraph (12) of Section B to that Annex II provides:

> The superior text preceding subheading 9817.-  00.92 which reads "Articles specially designed or adapted for the use or benefit of the blind or other physically or mentally handicapped persons:" is de-leted and the text "Articles specially designed or adapted for the use or

benefit of the blind or other physically or mentally
handicapped persons; parts and accessories (except parts
and accessories of braces  and artificial limb prosthet-
ics) that are specially designed or adapted for use in the
foregoing articles:" is inserted in lieu thereof.

Id. at 47,674.

To the extent defendant's motion equates the authority of the President under Article II of the Constitution with the legislative primacy of the Congress per Article I[1], it asserts too much. Indeed, as President Taft, writing for a unanimous Supreme Court wearing his subsequent mantle of Chief Justice in the customs case J.W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 410 (1928), reiterated:  "Congress could not delegate legislative power to the President".  He referred in his opinion to the earlier decision in the customs case Marshall Field & Co. v. Clark, 143 U.S. 649, 692 (1892), wherein the Court had stated

> [t]hat Congress cannot delegate legislative power to the
> President is a principle universally recognized   as vital
> to the integrity and maintenance of the  system of govern-
> ment ordained by the Constitution[,]

---

[1] Defendant's supporting memorandum states unequivocally, for example, at page 4 that Proclamation 6821 "expressly amend- ed the language of subheading 9817.00.96" and proceeds to refer to "a change in the language of a statute" and at page 5 to "sub- sequently enacted legislation includ[ing] language which did not appear in the earlier act" and "executive . . . change in the language of the statute", noting:

> . . . [I]t was the Congress and the President's pre-
> rogative alone . . . to decline to extend the priv- ilege
> of duty-free entry to importers of parts of articles for
> the handicapped.  Balancing these types  of conflicting
> interests between importers and domes-tic manufacturers is
> Congress' and the President's singular responsibility . .
> ..

Defendant's Memorandum, p. 6, n. 2.

and also quoted from <u>Wilmington & Zanesville R.R. v. Commission-ers</u>, 1 Ohio St. 77, 88 (1852), to wit:

> The true distinction, therefore, is[] between    the
> delegation of power to make the law, which neces-sarily
> involves a discretion as to what it shall be, and confer-
> ring an authority or discretion as to its
> execution, to be exercised under and in pursuance of the
> law.  The first cannot be done; to the latter no valid
> objection can be made.

See 276 U.S. at 407, 410-12.  See also 3 Antieau & Rich, Modern

Constitutional Law 442 (2d ed. 1997) ("purely legislative power

cannot be delegated by Congress to the President"), citing Panama

Refining Co. v. Ryan, 293 U.S. 388, 421 (1935).


On the other hand, if, as the defendant maintains, the

proclamation at bar is the equivalent of a statute, its counsel are

hard pressed to keep this court from reading and accepting  at face

value the words chosen by the President, supra; namely,  that 6821

was necessary merely to modify certain technical er-rors, including

inadvertent omissions and typographical errors, made in Presidential

Proclamation No. 6763 in implementing the Uruguay Round Agreements

and incorporating in the HTSUS tariff modifications necessary and

appropriate to carry out those agree- ments.  Compare generally

Defendant's Memorandum, pp. 6-9, with id. at 8:

> . . . While at first blush it appears that the "part"
> clause fell within Proclamation 6821's notation that the
> modifications were made to correct certain techni-cal

errors, inadvertent omissions, and typographical errors in Proclamation 6763, in reality the inclusion of the "parts" language here was **not** designed to correct a technical error, inadvertent omission, or typo-

> graphical error.  The "technical error/inadvertent
> omission/typographical error" clause referred sole-   ly
> to errors in Proclamation 6763, and Proclamation 6763 did
> not discuss 9817.00.96 whatsoever.

Emphasis in original; footnote omitted.

While the language of 6763 supports this last represen-tation, this court knows of no other way to redress an omission than by adding desired words.  Those added by paragraph (12) of Section B to Annex II to Proclamation 6821 (and quoted above)  are clear; nowhere did the President even attempt to claim that the resultant provision is anything more than correction of a technical error or coverage of an inadvertent omission. Defend-ant's counsel are thus left to attempt to rely on a canon of construction applicable to acts of Congress, to wit, that a change in the language of a statute is generally construed to reflect a change of legislative intent.[2]  Of course,

> canons of construction "are not in any true sense  rules
> of law.  So far as they are valid, they are    what Mr.
> Justice Holmes called them, axioms of ex-perience."

Caterpillar Inc. v. United States, 20 CIT 1169, 1177, 941 F.Supp. 1241 1248 (1996), quoting Justice Felix Frankfurter, Some Reflections on th

---

[2] See Defendant's Memoradum, pp. 4-5.  But see, e.g., NCNB Texas Nat'l Bank v. Cowden, 895 F.2d 1488, 1500 (5th Cir. 1990) ("The absence of dispositive legislative history in itself coun- sels against a conclusion that Congress intended to change the law").

Reading of Statutes 27 (1947).  Nonetheless, the can- on which the

defendant posits has been applied from time to time  by the Court of

International Trade[3], although many decisions

> might readily be cited where a change of language in  a
> later enactment different from that used in a form- er
> one[] was not regarded as showing a change of in-tent of
> the part of Congress. Andrews & Co. v. United States, 8
> Ct.Cust.Appls. 68; Magee v. United States,   4
> Ct.Cust.Appls. 443; United States v. Masson, 3 Ct.
> Cust.Appls. 168; United States v. Wertheimer Bros.,   2
> Ct.Cust.Appls. 515.
>
>> In the Andrews & Co. case, supra, this court said:
>>
>> . . . It is not every change in the terms of a
>> statute . . . that results in a change of its
>> general purpose.  The rule is one of con-
>> struction merely in any case, but even as a
>> rule of construction it has its limitations and
>> qualifications.
>>
>> * * *
>>
>> In the enactment of a tariff law, if Congress uses
>> different language from that used by it in previous en-
>> actments, while treating the same subject matter, it is
>> the duty of those who are called upon to determine the
>> meaning of its provisions to proceed primarily[] upon the
>> theory that the change was not made by accident, but that
>> it was intentional, and that by making such a change in
>> expression Congress used the term in a dif-ferent sense
>> from that in which the former expression was used. . . .
>> This rule is, however, not absolute, and does not compel
>> the conclusion that a change in meaning was meant.  It
>> merely indicates such intention.  . . .  The rule applies
>> where its application is not barred by more convincing
>> considerations, and does not apply where it would lead to
>> incongruity and confusion.

---

[3] E.g., Schott Optical Glass, Inc. v. United States, 11 CIT 899, 678 F.Supp. 882 (1987), aff'd, 862 F.2d 866 (Fed.Cir. 1988).

Stroheim & Romann v. United States, 13 Ct.Cust.Appls. 489, 492-93

(1926) (emphasis in original).  Indeed,

> "changes in statutory language need not ipso facto con-
> stitute a change in meaning or effect." . . . [A] legisla-
> tive body may amend statutory language "to   make what was
> intended all along even more unmistak-ably clear."

NCNB Texas Nat'l Bank v. Cowden, 895 F.2d 1488, 1500 (5th Cir. 1990),

quoting United States v. Montgomery County, Md., 761 F.2d 998, 1003

(4th Cir. 1985), and citing Phillips Petroleum Co. v. U.S. Envtl.

Protection Agency, 803 F.2d 545, 557-58 (10th Cir. 1986); Callejas v.

McMahon, 750 F.2d 729, 731 (9th Cir. 1984); Brown v. Marquette Sav. &

Loan Ass'n, 686 F.2d 608, 615 (7th Cir. 1982); and United States v.

Tapert, 625 F.2d 111, 121 (6th Cir.), cert. denied sub nom.

Freelander v. United States, 449 U.S. 952 (1980).

One "well recognized indication of legislative intent to

clarify, rather than change, existing law is doubt or ambiguity

surrounding a statute." 2B Sutherland Statutory Construction §49.11

(5th ed. 1992) (internal quotation and footnote omitted).  As noted

by this court in slip op. 98-44, 22 CIT at ___ and 6 F.-Supp.2d at

913, n. 4, and now conceded by the defendant, Customs apparently has

had such doubt.  When the Service first addressed the classification

of parts for hearing aids, it concluded (in Headquarters Ruling

Letter 807732 (July 25, 1984)) that they were entitled to duty-free entry under TSUS item 960.15[4] as articles specially designed for use by the handicapped.  Customs thereafter revisited the issue and reached a contrary conclusion in its Ruling Letter 087559 (Oct. 9, 1990) even though the statutory language remained virtually un-changed.  Compare Slip Op. 98-44,  n. 4, ibid., with Defendant's Memorandum, p. 3, n. 1, supra ("Customs apparently did not connect the importance of the stat- utory change discussed in this motion to the pending litigation until the Court issued its opinion").

## II

Be the administrative uncertainty as it has been, this court continues to have the duty "to find the correct result[] by whatever procedure is best suited to the case at hand."  Jarvis Clark Co. v. United States, 733 F.2d 873, 878, reh'g denied, 739 F.2d 628 (Fed.Cir. 1984)(emphasis in original); Gen. Elec. Co. -  Medical Systems Group v. United States, 24 CIT ___, ___, 86 F.-Supp.2d 1291, 1295 (2000), appeal docketed, No. 00-1263 (Fed.Cir. March 2, 2000).  Here, that procedure, as stated above, raises the issue of whether or not slip op. 98-44 contains a "significant flaw" or is even "mani-

---

[4] The parties stipulated that this item was identical to TSUS item 870.67 and HTSUS subheading 9817.00.96.  See Slip Op.   98-44, 22 CIT at ___ and 6 F.Supp.2d at 911, para. 16.

festly erroneous".  In the light of the President's attempt to insure that U.S. tariffs are in com-pliance with the country's international agreements, and also of the foregoing discussion thereon, this court cannot answer that issue in the affirmative on either count.  Indeed, if, as it has opined, "rehearing is a means to correct a miscarriage of justice"[5], the reconsideration afforded herein does not counsel that the judgment in favor of the plaintiff entered pursuant to slip op. 98-44 be set aside, and vacation thereof is therefore hereby denied.

        So ordered.

Dated:  New York, New York
        June 19, 2000

                                   _____
                                   Judge

---

[5] Nat'l Corn Growers Ass'n v. Baker, 9 CIT 571, 584 (1985).