Slip Op. 05 - 28

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - x
AGRO DUTCH INDUSTRIES LIMITED,  :

Plaintiff,  :

v.  : Court No. 02-00499

UNITED STATES,  :

Defendant.  :
- - - - - - - - - - - - - - - - - - - x


Memorandum & Order


[Upon plaintiff's motion for reconsideration,
 judgment of dismissal affirmed.]

Dated: February 28, 2005


Garvey Schubert Barer (Lizbeth R. Levinson and Ronald M. Wisla) for the plaintiff.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Stefan Shaibani); and Office of Chief Counsel for Import Administration, U.S. Department of Commerce (Matthew D. Walden), of counsel, for the defendant.


AQUILINO, Senior Judge: Final judgment has been entered, dismissing this action per slip opinion 05-2, 29 CIT ___, ___ F. Supp.2d ___ (Jan. 7, 2005), wherein the court was constrained to conclude that it had no jurisdiction to decide substantive issues raised in plaintiff's motion for judgment upon the administrative record compiled by the International Trade Administration, U.S. Department of Commerce ("ITA") sub nom. Certain Preserved Mushrooms From India:  Final Results of Antidumping Duty Administrative Re-

view, 67 Fed.Reg. 46,172 (July 12, 2002). Familiarity with that slip opinion is presumed. It reported that the court on December 1, 2004 had sought to ascertain from plaintiff's counsel whether any implicated, specific entries of subject merchandise remained unliquidated as of that date but also that there had not been a response to that query by the time of the opinion's publication, January 7, 2005.

I

Come now counsel with a motion for reconsideration dated January 12, 2005 that confirms receipt of the court's December 1, 2004 letter two days later. It seeks to explain, among other things, that they

> understood that the Court was requesting a full list, by entry number and date of entry, of any unliquidated ship-ments.

Further:

> At no time, did counsel understand that the Court was asking simply for confirmation that there were still unliquidated shipments, a request that would have been answered in the affirmative immediately. Counsel would have also responded to the Court's letter immediately had there been no unliquidated shipments remaining. Quite to [the] contrary, since receiving the Court's request, counsel had been working with Agro Dutch customers to compile the lists of unliquidated entries requested.

> * * *

> Counsel was reluctant to respond to the Court's request in "piecemeal" fashion (by submitting some but not all data). [T]he[y] verified several times that the request from the Court did not specify any deadline by which a response had to be submitted.

With all due respect, Plaintiff believes that the Court's decision to deny its Motion for Judgment is unwarranted in the light of the fact that the Court's letter of December 1, 2004 did not specify any deadline for a response. Had the Court designated a deadline, either in the December 1, 2004 letter or subsequent thereto, Plaintiff would have complied with that deadline without question. Here, Plaintiff's counsel had no notice that a deadline existed, nor that the consequences of not responding to the Court's letter by a particular date (which date was not known) would be so devastating. Nor was the amount of time taken to respond to the request, a little over 30 days, unreasonable given the number of parties that had to be contacted, the detail that had to be collected, and the fact that many company officials are celebrating religious holidays during the month of December.

. . . By denying Plaintiff's Motion for Judgment, this Court is punishing Agro Dutch and its customers for failing to meet a deadline that was never set, and was never known to counsel or them.

Appended to this motion are lists of entries of subject merchandise apparently still unliquidated. Indeed, defendant's response to the motion is to

agree with Agro Dutch's assertion that unliquidated entries remain from the period of review. We defer to the Court with respect to whether Agro Dutch's actions in response to the Court's December 1, 2004 letter warrant dismissal of this action.

A

Slip opinion 05-2 did not disclose the entire text of the undersigned's December 1, 2004 letter to counsel, to wit:

In anticipation of issuance of a decision on plaintiff's motion for judgment in the above matter, and with regard to your letter to the Court dated November 23, 2004, please advise at your earliest convenience which, if any, implicated, specific entries of subject merchandise remain unliquidated at this time.

That missive meant exactly what was indicated by the lie of this action.

First, the court was near issuance of a decision on the substantive issues raised by plaintiff's motion for judgment, namely, (a) whether there was any basis for the ITA to use adverse facts available to calculate plaintiff's margin of dumping; (b) whether the agency wrongly added a profit rate to its cost of production that was derived from sales made by it to customers in a third country during the previous period of review; and (c) whether the ITA should have deducted commissions prior to calculating its credit expenses.  See generally Plaintiff's Brief, pp. 1-5.

Secondly, plaintiff's letter dated November 23, 2004 was received at an inopportune moment[1] by this court; it referred to inapposite, other cases (as thereby necessarily discussed in slip opinion 05-2) with regard to a plea for reliquidation of many or almost all of plaintiff's entries that is not possible under long-established rules of law.

Third, the request on December 1, 2004 for advice from experienced counsel at their earliest convenience, precipitated as it was by their importuning of the week before, certainly did not contemplate lack of a response by or from them until their filing of yet another motion on the twelfth of January of this new year.

---

[1] Thereafter, on January 5, 2005, the defendant interposed a Motion for Leave to File a Response to Plaintiff's Letter-Notice of Supplemental Authority that can be, and it hereby is, denied.

Cf. Precision Specialty Metals, Inc. v. United States, 24 CIT 1016, 1023, 116 F.Supp.2d 1350, 1358 (2000) (a delay of 17 days in performing an act is outside the meaning of "forthwith"), subsequent reprimand of gov't att'y aff'd, 315 F.3d 1346 (Fed.Cir. 2003).

(1)

Whatever the precise circumstances of this matter, the court considers a motion for reconsideration to be "a means to correct a miscarriage of justice". Starkey Laboratories, Inc. v. United States, 24 CIT 504, 510, 110 F.Supp.2d 945, 950 (2000), quoting Nat'l Corn Growers Ass'n v. Baker, 9 CIT 571, 585, 623 F.Supp. 1262, 1274 (1985). Compare Bomont Industries v. United States, 13 CIT 708, 711, 720 F.Supp. 186, 188 (1989) ("a rehearing is a 'method of rectifying a significant flaw in the conduct o[f] the original proceeding'"), quoting RSI (India) Pvt., Ltd. v. United States, 12 CIT 594, 595, 688 F.Supp. 646, 647 (1988), quoting the "exceptional circumstances for granting a motion for rehearing" set forth in North American Foreign Trading Corp. v. United States, 9 CIT 80, 607 F.Supp. 1471 (1985), aff'd, 783 F.2d 1031 (Fed.Cir. 1986), and in W.J. Byrnes & Co. v. United States, 68 Cust.Ct. 358, C.R.D. 72-5 (1972). Cf. USCIT Rule 61:

> No error . . . or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the

> proceeding must disregard any error or defect in the
> proceeding which does not affect the substantial rights
> of the parties.

Or, stated another way, the

> purpose of a petition for rehearing [] under the Rules
> . . . is to direct the Court's attention to some material
> matter of law or fact which it has overlooked in deciding
> a case, and which, had it been given consideration, would
> probably have brought about a different result.

NLRB v. Brown & Root, Inc., 206 F.2d 73, 74 (8th Cir. 1953).  See
also Exxon Chemical Patents, Inc. v. Lubrizol Corp., 137 F.3d 1475,
1479 (Fed.Cir.), cert. denied, 525 U.S. 877 (1998); New York v.
Sokol, No. 94 Civ. 7392 (HB), 1996 WL 428381, at *4 (S.D.N.Y. July
31, 1996), aff'd sub nom. In re Sokol, 108 F.3d 1370 (2d Cir.
1997); In re Anderson, 308 B.R. 25, 27 (8th Cir. BAP 2004).

(2)

However the standard for deciding such a matter is
articulated, it does entail consideration of the underlying sub-
stantive issues to determine whether or not there has been a
miscarriage of justice.  Here, those issues are as outlined above,
and, prior to having been sidetracked by plaintiff's jurisdictional
maneuvering, the court was poised to opine that none of them
warrant any judicial relief.

(a)

That is, there was (and is) a basis for the ITA to use
adverse facts available to calculate plaintiff's margin of dumping.
As it should well know, the Trade Agreements Act of 1979, as

amended, provides that, if an interested party has failed to cooperate by not acting to the best of its ability to comply with an ITA request for information, the agency may use an inference that is adverse to the interests of that party in selecting from the facts otherwise available.  19 U.S.C. §1677e(b).  See, e.g., Nippon Steel Corp. v. United States, 337 F.3d 1373, 1381-84 (Fed.Cir. 2003).  That is what happened when the ITA came to conclude that the plaintiff "failed to provide complete and timely information with regard to a specific sales channel".  Plaintiff's Appendix, Tab 1, p. 10.  And there is substantial evidence on the agency record to support this conclusion.  See, e.g., id. at 8-10.

(b)

Plaintiff's contention that the use of home-market, as opposed to third-country, sales to calculate profit rates is preferred when computing constructed value lacks merit.  That is, clause (iii) of 19 U.S.C. §1677b(e)(2)(B) permits the ITA to compute profit based on sales data, provided "the amounts incurred and realized for . . . profits [are] based on any other reasonable method".  See Statement of Administrative Action ("SAA"), H.R. Doc. No. 103-316, vol. 1, p. 840 (1994)("section [1677b](e)(2)(B) does not establish a hierarchy or preference among the[] alterna-tive[s]").  Moreover, courts have not accepted plaintiff's argu-ment that that "method" limits the derivation of profit rates to home-market sales because of the language which follows, namely,

> except that the amount allowed for profit may not exceed
> the amount normally realized by exporters or producers
> . . . in connection with the sale, for consumption in the
> foreign country[.]

E.g., Geum Poong Corp. v. United States, 25 CIT 1089, 1093, 163 F.

Supp.2d 669, 675 (2001):

> . . . The SAA clarifies that the homemarket limitation
> does not apply generally to "any reasonable method"
> provided for under [clause (iii)], but to the profit cap
> ordinarily placed thereon[.]

Citing ibid. And the ITA met that requirement here. See Plain-

tiff's Appendix, Tab 1, p. 6. Hence, it computed the profit rate

in accordance with law. See, e.g., IPSCO, Inc. v. United States,

965 F.2d 1056, 1061 (Fed.Cir. 1992), citing Chevron U.S.A., Inc. v.

Natural Res. Defense Council, 467 U.S. 837, 844 (1984); IPSCO, Inc.

v. United States, 899 F.2d 1192, 1194-95 (Fed.Cir. 1990); U.H.F.C.

Co. v. United States, 916 F.2d 689, 698 (Fed.Cir. 1990).

(c)

Plaintiff's contention that the ITA should have deducted,

presumably pursuant to 19 U.S.C. §1677b(a)(6)(C)(iii), commissions

paid to third parties prior to calculating credit expenses is also

of little moment. The calculation of imputed credit expenses in-

cludes all of the interest foregone between the sales and the

payment dates. See Mitsubishi Heavy Industries, Ltd. v. United

States, 23 CIT 326, 330, 54 F.Supp.2d 1183, 1188 (1999)("By allow-

ing the purchaser to make payment after the shipment date, the

producer forgoes the opportunity to earn interest on an immediate

payment").  See also Floral Trade Council v. United States, 23 CIT 20, 33, 41 F.Supp.2d 319, 332 (1999).  Here, the plaintiff admits that it only paid commissions to third parties after receiving payment from its customers.  See Plaintiff's Brief, pp. 5, 23.  In short, the ITA correctly concluded that commissions paid to third parties were not to be deducted prior to the calculation of imputed credit expenses.  See Plaintiff's Appendix, Tab 1, p. 2.

II

In view of the foregoing, the court cannot conclude that its judgment of dismissal pursuant to slip opinion 05-2 entailed a miscarriage of justice.  Ergo, that judgment must be, and it hereby is, affirmed.

So ordered.

Dated:  New York, New York
        February 28, 2005

Thomas  J.  Aquilino,  Jr.
Senior Judge